STATE of Missouri, Plaintiff–Respondent,

v.

Clayton Leon MILLER, Defendant–Appellant.

No. 18804.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 8, 1994.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

Defendant Clayton Leon Miller was found guilty by a jury of the class C felony of sexual assault in the first degree, § 566.040, RSMo 1986, and sentenced to a term of six years with the Missouri Department of Corrections. He appeals; we affirm.

Defendant does not challenge the sufficiency of the evidence, which may be stated briefly. JoAnn, the complaining witness, testified about her consensual sexual intercourse with Defendant on two occasions in 1992, once in October, "a week or two before Halloween," and once in early November, "about two or three days" after Halloween. It was uncontested at trial that JoAnn was 14 years of age and that she and the 22–year-old Defendant were not married when the instances of intercourse occurred. This evidence satisfies the elements of the offense.[1]

Defendant's first point on appeal emanates from the state's presentation at trial of evidence of JoAnn's pregnancy. We summarize that evidence.

During the October encounter, Defendant wore a condom, which, Defendant told JoAnn, "broke." JoAnn examined the prophylactic device and confirmed "it had a tore in it." During the November union, Defendant did not wear a condom.

In October, JoAnn "started getting real sick," a condition that included "vomiting and stuff." She missed her November menstrual period which she should have experienced "at the end of the month." Around Thanksgiving, JoAnn and Defendant told her mother she was pregnant. JoAnn's mother testified the pair came to her and Defendant "asked me what I would do if JoAnn was pregnant." He also asked her, "Have you ever heard of the rubber breaking?"

JoAnn and Defendant's relationship, which had included talk of marriage, soon ended. At the March 29, 1993, trial, JoAnn testified her baby was due July 2.

Prior to trial, Defendant filed his "Motion to Permit Introduction of Evidence under Section 491.015,"[2] in which he stated:

Comes now defendant, and moves the Court to permit introduction of evidence relating to alternative sources of pregnancy of the complaining witness. In support of his motion defendant alleges:

1. Defendant is charged with sexual assault in the first degree.

2. In the State's discovery answer, allegations exist that the complaining witness is pregnant, purportedly by the defendant.

---

1. Section 566.040, RSMo 1986, provides, in pertinent part:

   1. A person commits the crime of sexual assault in the first degree if he has sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old.

2. Section 491.015, RSMo 1986, commonly referred to as the "Rape Shield Statute," provides:

   1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:
   ....
   (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;
   ....
   2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

   3. If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, he shall file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. The court shall hold an in camera hearing to determine the sufficiency of the offer of proof and may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof. If the court finds any of the evidence offered admissible under this section the court shall make an order stating the scope of the evidence which may be introduced. Objections to any decision of the court under this section may be made by either the prosecution or the defendant in the manner provided by law. The in camera hearing shall be recorded and the court shall set forth its reasons for its ruling. The record of the in camera hearing shall be sealed for delivery to the parties and to the appellate court in the event of an appeal or other post trial proceeding.

3. Evidence from the defense may indicate that another individual was having sexual intercourse with her at the same time.

4. This evidence is relevant according to Section 491.015.

Wherefore, defendant requests the Court to issue an order permitting the introduction of this evidence.

Immediately prior to the reception of evidence, out of the hearing and presence of the jury, the following transpired:

THE COURT: On the issue of pregnancy, the Court will allow your request to cross-examine the witness[3] on that issue of the pregnancy.

[DEFENSE COUNSEL]: Judge, would that also extend to the other two witnesses?[4] Might I inquire of the other two witnesses if she dated anyone else during this period of time, which could raise the inference that somebody else is the father? . . . .

THE COURT: [Section 491.015] says evidence of specific instances of sexual activity.

[DEFENSE COUNSEL]: So you're going to limit me to just naming names, then, is that right?

THE COURT: It says specific instances. So the mere fact that she went out on a date is not evidence. It has to be an evidence of specific incidence of sexual activity.

[DEFENSE COUNSEL]: So I can only ask people if she had sexual intercourse during that October and November of '92?

THE COURT: Right, and that's what you requested, during those two months, right?

[DEFENSE COUNSEL]: Right.

[PROSECUTOR]: Isn't the time frame up through December?

[DEFENSE COUNSEL]: No. It's October to November, is what you allege in your—I believe it's like October 1 to November 30, or something.

THE COURT: December 14th. So you'll be limited to that time frame.

[DEFENSE COUNSEL]: Okay.

At trial, JoAnn was cross-examined by defense counsel as follows:

Q. You indicated that you guys [JoAnn and Defendant] had made a commitment. You'd used the word that you wouldn't cheat. Would you tell us what you mean by cheat?

A. Like go out with other guys, or other girls, and date around.

Q. Did you also mean by that that you wouldn't have sexual intercourse with anybody else? Would that be your understanding of what that meant?

A. Yeah, but I wasn't thinking of that at the time, because I wasn't wanting no sexual relationship.

Q. Okay, now, during the months of October and November of 1992, did you ever have sex with William Way?

A. No.

Q. Okay, and during the months of October and November of 1992, did you ever have sex with Mike Adler?

A. No.

Q. You didn't?

A. No.

■ In his first point on appeal, Defendant contends the trial court, by denying him "the right to cross-examine the state's witnesses concerning [JoAnn's] other dating relationships" violated his right to confront the witnesses against him "in that such questioning of the witnesses was necessary in order to rebut the prejudicial inference that [Defendant] was the source of [JoAnn's] pregnancy."

Although Defendant does not mention § 491.015 in Point I, his argument under this point is based on his allegation that the trial court misapplied the rape shield statute. He argues that evidence of JoAnn's "dating relationships" with men other than Defendant

3. Presumably JoAnn.

4. From reading Defendant's brief on appeal, we learn the identify of "the other two witnesses" to be JoAnn's mother and one of JoAnn's eighth grade classmates, both of whom testified for the state.

"could have raised doubt in the minds of the jurors that [Defendant] was the source of her pregnancy." Thus, the argument goes, the evidence was admissible under § 491.015 and, therefore, the trial court erred in not permitting questions of JoAnn's mother and classmate about those "dating relationships."

Defendant's argument has no merit. First, Section 491.015.1 declares inadmissible "evidence of specific instances of the complaining witness' prior sexual conduct" unless those specific instances fit one of four enumerated categories. Defendant asserts category (2), "Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease," applies in this case. However, Defendant sought to introduce evidence of JoAnn's "dating relationships." For the relevant commonly understood meaning of the noun *date*, we turn to Webster's Third New International Dictionary (1976), where we find at 576:

> **5a:** an appointment or engagement usu. for a specified time ... *esp:* an appointment between two persons of the opposite sex for the mutual enjoyment of some form of social activity ... b: an occasion (as an evening) of social activity arranged in advance between two persons of opposite sex c: a person of the opposite sex with whom one enjoys such an occasion of social activity....

By claiming that evidence of JoAnn's "dating relationships" is admissible under § 491.015.1(2), Defendant, in effect, equates a "date" with an occasion for sexual activity. We decline to endorse that cynical notion.

■ A second flaw in Defendant's argument is his erroneous assumption that he complied with the procedural requirements of the rape shield statute. Under Subsection 3, Defendant was required, in his offer of proof, to present his evidence to the court. The *in camera* discussion, pertinent portions of which are set out above, does not satisfy the specificity requirements for an offer of proof under § 491.015. *See State v. Hassler,* 690 S.W.2d 178, 180[3] (Mo.App.1985). *See*

also *State v. Lockhart,* 698 S.W.2d 13, 15 (Mo.App.1985).[5]

■ The constitutionality of § 491.015 is established. *See State v. Brown,* 636 S.W.2d 929, 934–35[2, 3] (Mo. banc 1982), *cert. denied* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 448 (1983), and *State v. Ray,* 637 S.W.2d 708, 709 n. 1 (Mo. banc 1982), *each overruled in part on other grounds, State v. Jones,* 716 S.W.2d 799, 800[1] (Mo. banc 1986). *See also State v. Madsen,* 772 S.W.2d 656, 658–59[2] (Mo. banc 1989), *cert. denied* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990). Defendant may not disregard the offer of proof requirement of § 491.015.3 and then prevail in a claim that the trial court's rejection of the evidence violated his right to confront the witnesses against him.

Thus Defendant's reliance on *State v. Douglas,* 797 S.W.2d 532 (Mo.App.1990), is misplaced. We quote from *Douglas:*

> Defendant's counsel then, after Tracy's [the victim] direct examination was completed, asked the court's permission to cross-examine her with respect to other sexual activity during the time intervening between defendant's alleged intercourse with her—in the summer of 1987—and Dr. Esquivel's examination on May 9, 1988, when the absence of the hymen was noted Defendant's counsel quoted from Dr. Esquivel's report, which stated: "Tracy says in the last few months she was sexually active with her boyfriend." The State objected to the proposed cross-examination on the basis of the rape shield statute, and the court sustained the objection.

797 S.W.2d at 534. The court of appeals reversed the defendant's conviction of first degree sexual assault on Tracy, stating:

> [T]he rape shield statute may not be applied so strictly as to deprive the defendant of the fair trial comprehended by the concept of due process. To allow the State to show that Tracy's hymen was absent, with the clear and calculated implication that its absence was caused by intercourse with the defendant, then to forbid defendant to show that Tracy had had inter-

---

**5.** Although the issue is not before us, the offer of proof also is deficient regarding the cross-examination of JoAnn about purported sexual activity

with William Way and Mike Adler. We find no evidence in the offer of proof regarding these accusations.

course with another, was violative of defendant's right to a fair trial.

797 S.W.2d at 535–36 (footnote omitted). In *Douglas,* the defendant's offer of proof alleged a relevant time frame (after the alleged intercourse with the defendant and before the pediatrician's examination), relevant sexual activity, and an identifiable sexual partner (her boyfriend). In contrast, in the appeal before us, the offer of proof is specific only with respect to the time frame.

Defendant's Point I is rejected.

■ In Point II, Defendant contends the trial court, after sustaining an objection to a particular line of questioning by the state of JoAnn, should have, *sua sponte,* ordered the jury to disregard her testimony on the subject or declared a mistrial. In his new trial motion, Defendant claimed the court erred in not voluntarily instructing the jury to disregard the evidence. The new trial motion did not accuse the court of error in failing, *sua sponte,* to order a mistrial.

It was the responsibility of defense counsel to request the trial court to instruct the jury to disregard the evidence. *State v. Oliver,* 729 S.W.2d 560, 564[7] (Mo.App.1987). Because there was no such request, the trial court, in ruling on the issue in Defendant's new trial motion, was limited to plain error review under Rule 29.12(b). *State v. Harrison,* 864 S.W.2d 387, 389 n. 4 (Mo.App.1993). Rule 29.12(b) provides:

> Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

The trial court denied Defendant's new trial motion without comment. If the court declined to review for plain error, it did not abuse its Rule 29.12(b) discretion. If the court concluded no manifest injustice or miscarriage of justice resulted from its failure to voluntarily instruct the jury to disregard the evidence, that conclusion is supported by the record. Rule 30.25(b) permits our summary disposition of this portion of Defendant's Point II.

■ The request for a mistrial was not made contemporaneously to JoAnn's testimony, and the trial court was not presented an opportunity in the new trial motion to rule on the request. "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. Valentine,* 646 S.W.2d 729, 731[1] (Mo.1983). Regarding the trial court's failure, *sua sponte,* to order a mistrial, we decline to exercise our discretion under Rule 30.20 to review for plain error. Point II is rejected.

■ In Point III, Defendant contends the trial court erred when it did not, *sua sponte,* declare a mistrial following certain comments by the prosecutor in his closing argument. Defendant's trial counsel did not contemporaneously object to the comments and did not raise the issue in the new trial motion. We decline to review for plain error. *See State v. Bogard,* 836 S.W.2d 87, 88–89[1, 2] (Mo.App.1992). Point denied.

We affirm the judgment of the trial court.

PARRISH, C.J., and MONTGOMERY, J., concur.