STATE of Missouri, Respondent,

v.

Richard SALES, Appellant.

No. WD 58123.

Missouri Court of Appeals,
Western District.

Aug. 7, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 2001.

Application for Transfer Denied
Nov. 20, 2001.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen., Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Richard Sales appeals from his conviction of two counts of sodomy under § 566.062, RSMo 1994. He was sentenced to consecutive terms of 30 years in prison on each count as a persistent sexual offender. This is the second appeal. An original conviction on these charges was reversed, *State v. Sales,* 984 S.W.2d 183 (Mo.App.1998), because § 566.025 authorizing admission propensity evidence consisting of another sexual crime against a minor had been declared unconstitutional. *State v. Burns,* 978 S.W.2d 759 (Mo. banc 1998). After retrial Sales was again found guilty on both counts.

On appeal he contends that: (1) that the trial court erred in excluding evidence that one of the victims had previously been sexually victimized in an unrelated attack; (2) the trial court should have granted a mistrial after a witness from the Division of Family Services (DFS) testified that there was probable cause to believe the other victim had been abused; and (3) the trial court improperly sentenced him as a persistent sexual offender under § 558 .018.2, RSMo. We find that the trial court did not err in excluding evidence of the prior sexual attack upon the victim under the rape shield statute, § 491.015, RSMo; that the trial court did not err in not granting a mistrial because it granted the relief requested by Sales to order the jury to disregard the statement by the DFS worker; and the trial court properly found that Sales had been convicted of sodomy in 1991 and, therefore, correctly sentenced him as a persistent sexual offender for the current charges. The judgment of conviction is therefore affirmed.

## FACTS

Sales was charged by the State with the sodomy of two minor boys. Sales met his former wife, Julie, in August of 1993 and married her in October of the same year. Julie had two sons from a previous relationship, O.M. and Kenny. Richard and Julie together had a daughter. The two separated in December of 1994 and Sales moved in with another woman, Linda, and her son, J.H., until April of 1995.

Sales was charged with two counts of sodomy after J.H. and O.M. reported to DFS investigators and detectives that Sales sexually assaulted them. At trial J.H. testified that Sales had "stuck his thing in my butt." O.M. testified that Sales had touched his behind "with his privacy." Further, investigators testified at trial that O.M. told them that Sales "squeezed his private part," and put his mouth on O.M.'s mouth.

From the record, we gather that some years prior to the alleged incident involving Sales, while she and her son were living in Warsaw, Missouri, J.H's mother, Linda, walked into a room in her house and saw a man on top of J.H. The incident was reported to the Warsaw police, but no arrest was made. J.H. also told Detective Baker, at the time of the Sales' investigation, that the Warsaw man made him "suck his ding-dong," "sucked J.H.'s ding-dong," made J .H. stick his "ding-dong" in the man's "butt" and did the same thing to J.H. as Sales had done.

At Sales' trial, the court sustained the State's motion in limine to exclude evidence of J.H.'s prior abuse, but allowed defense counsel to make an offer of proof during trial. At trial the defense counsel made her offer of proof and, outside of the hearing of the jury, J.H. told the judge that the Warsaw man had done the same thing to him as Sales had done. Linda also testified to seeing the man on top of J.H. The court again sustained the State's objection and ruled that under the rape shield statute, § 491.015, RSMo 1994, defense counsel could not cross-examine J.H. or present other evidence regarding the previous assault.

During closing argument, the prosecutor said: "These interviewers never brought the name 'Rick Sales' up. The kids did. They never brought up sexual content. The kids did. How does a six and a nine year old know about putting a penis in someone's rectum?" Defense counsel objected and argued that if the State could argue the boys' precocious sexual knowledge came from being abused by Sales, then she should have been able to present evidence regarding J.H.'s prior sexual abuse. The court sustained the objection as to J.H.

## Evidence of Prior Sexual Abuse of the Victim

In our case, the State contends, first, that the evidence was properly prohibited because the rape shield statute precluded its admission. Section 491.015 RSMo, is designed to protect a victim and permits introduction of evidence of a victim's prior sexual conduct only if it falls within one of the four exceptions contained in the statute and is found by the trial court to be relevant to a material fact or issue. *State v. Sloan*, 912 S.W.2d 592, 598 (Mo.App. 1995). The rape shield statute reads as follows:

1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, **opinion** and **reputation** evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

§ 491.015.

Sales cites *State v. Douglas,* 797 S.W.2d 532 (Mo.App.1990) in support of his claim in his first point on appeal that evidence of the prior assault on J.H. should have been permitted. The State contends that evidence of J.H.'s previous sexual abuse does not fit into any exception under § 491.015 and, therefore, was not admissible. Sales argues that the analysis should not stop there and that under *Douglas* he had a constitutional right to introduce evidence of the prior abuse because it was extremely relevant as to how J.H., a young boy, could have acquired a precocious sexual knowledge. In *Douglas,* this court held that the trial court had abused its discretion in precluding the defendant from cross-examining the child victim regarding sexual activity with her boyfriend and that such testimony was admissible despite the rape shield statute, § 491.015. *Id.* During the trial, the prosecution introduced evidence that an examination had revealed the absence of hymeneal tissue, which, the expert testified, was consistent with sexual activity. *Id.* The appellant sought to present evidence that the victim was sexually active with her boyfriend to show that the victim's hymen could have been broken in another fashion. The court in *Douglas* held that it was unfair for the State to suggest that the victim's vaginal condition was related to sexual activity with the defendant without giving the defendant the opportunity to present evidence that another person or an alternative cause were responsible for the condition (the victim was sexually active with a boyfriend). *Id.* Even though in *Douglas* the evidence did not fall under one of the four exceptions to the rape shield statute, nevertheless, the court stated that no rule of evidence can "be applied so strictly as to deprive [a] defendant of the fair trial comprehended by the concept of due process." *Id.* at 535.

The State argues that *Douglas* does not apply because no expert testimony or other evidence was introduced during trial to suggest that J.H. must have gained an unusual sexual knowledge from abuse by Sales. Instead, the State cites *State v. Harvey,* 641 S.W.2d 792 (Mo.App.1982) and *Sloan, supra.*

In *Harvey,* the appellant appealed his conviction for the attempted rape of his stepdaughter and argued that the trial court erred in sustaining the State's motion to exclude evidence of a prior report of sexual assault made by the victim, which never resulted in a conviction. Harvey argued that by excluding this evidence the jury was given the inference that the young girl's unusually extensive sexual knowledge must have come from the alleged encounter with Harvey. This court upheld the conviction and explained: "Defendant's intent in seeking to introduce [the] evidence . . . was to attack her credi-

bility by implying that when she described certain acts allegedly performed by defendant, she actually described events which she learned about at that earlier time." *Id.* at 798. During Harvey's trial, the victim's sister testified to the same set of facts as the victim did. The court, in its decision, found Harvey was not prejudiced by the prohibition and said the sister's testimony: "weakens defendant's position. She vividly reinforced [the victim's] story of ... events and undercut defendant's conjecture about [victim's] state of mind. Even if defendant's speculations about [victim's] earlier experience, her knowledge and her views could be shown to be so, [the sister's] testimony itself was in any event sufficient to establish the charge against defendant." *Id.*

In *Sloan,* the appellant had been convicted of one count of sexual abuse and two counts of sodomy. He argued that the trial court erred in refusing to allow the testimony of the victim's grandmother relating to the victim's past sexual conduct. Appellant argued that the evidence was relevant to show an alternative source of the victim's sexual knowledge. The court denied Sloan's appeal and said, citing *Harvey,* that the six-year-old victim's recollection of events was "child-like" and "probative without reference to any prior sexual experience or knowledge of any sexual connotation in the conduct attributed to defendant." *Sloan,* 912 S.W.2d at 598–99. Sales argues that the court in *Sloan* incorrectly relied upon *Harvey,* because it failed to recognize that Harvey's appeal was only denied because he failed to show how he was prejudiced.

Missouri's rape shield statute prohibits the introduction of reputation evidence or evidence of a victim's past sexual history unless such evidence falls within one or more of the four exceptions. However, even though the evidence may fall within one of the exceptions, the court may only admit the evidence if it is also relevant to a material fact or issue of the case. See § 491.015.2; *State v. Jones,* 716 S.W.2d 799, 800 (Mo. banc 1986).

## Standard of Review

A trial court has broad discretion in deciding whether to admit or exclude evidence at trial. *State v. Simmons,* 944 S.W.2d 165, 178 (Mo. banc 1997). We will not disturb the trial court's ruling unless we find that it clearly abused its discretion. *Id.* And we will only find a trial court to have clearly abused its discretion when a ruling is "clearly against the logic and circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Brown,* 939 S.W.2d 882, 883 (Mo. banc 1997).

In our analysis, it is necessary that we consider both the defendant's constitutional rights as well as the prohibitions of the rape shield statute. We first examine whether the State used evidence of J.H.'s precocious sexual knowledge to draw an inference for the jury that he gained that sexual knowledge from Sales' abuse. If the State did this, then Sales was constitutionally entitled to put on a defense showing an alternative source. *Douglas,* 797 S.W.2d at 534.

## Analysis

Before beginning our analysis of Sales' first point, it is important to explain how *Douglas,* the main case Sales relies upon, fits into the rape shield statutory analysis. The *Douglas* court, despite the prohibition of the rape shield statute, allowed evidence that did not fall within one of the four exceptions. Although, at first blush, this would seem contrary to the strict terms of the statute, the *Douglas* court interpreted the rape shield statute so as to ensure its

constitutionality by protecting a defendant's right to a fair trial. *Douglas,* 797 S.W.2d at 535. The limited holding in *Douglas* was that if the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial. In fact, the court in *Douglas* said that absent the State's introduction of evidence of the victim's torn hymen, cross-examination seeking to explore whether or not she had had sex with her boyfriend would have been inadmissible under the rape shield statute as well as irrelevant under the common law. *Id.* at 534–35.

■ After an extensive review of the trial transcript we find that the State never presented evidence or testimony claiming or suggesting that J.H.'s precocious sexual knowledge was acquired from an encounter with Sales. Thus, our case is unlike *Douglas* where the testimony about the absence of a hymen had only a purpose to support the victim's testimony that the defendant had intercourse with her. Nor is this case one where the State attempted to introduce so-called general profile testimony describing behaviors and other characteristics commonly observed in sexually abused victims. See *State v. Williams,* 858 S.W.2d 796, 798–99 (Mo.App.1993).

The trial court correctly excluded evidence of J.H's previous abuse because it did not fall within any of the four exceptions under the rape shield statute, and it was not relevant or material to any issue in the case. Further, we find that Sales' constitutional rights were not violated, because, unlike the prosecution in *Douglas,* the State did not present evidence which was intended to show or to infer that J.H. must have acquired his knowledge of sexual matters from abuse by Sales. The court in *Douglas* said that but for the State's introduction of evidence of the victim's torn hymen, cross-examination seeking to explore whether or not she had sex with her boyfriend would have been inadmissible under the rape shield statute as well as irrelevant under the common law. *Douglas,* 797 S.W.2d at 534–35. Here, the state did not attempt to use evidence of J.H.'s unusual sexual knowledge to establish Sales' guilt, therefore, Sales was not constitutionally entitled to cross-examine J.H. about any past abuse or present other evidence of that abuse.

■ Lastly, Sales argues that even though the State did not expressly present evidence of J.H.'s unusual knowledge, J.H.'s testimony, as well as the comment made by the prosecutor during closing argument, allowed the jury the inference that J.H. had an overly mature sexual knowledge because he was abused by Sales. This court in *Harvey,* 641 S.W.2d at 798, expressly rejected this argument. We also held that just because the only evidence of a sexual encounter before the jury involved the defendant, it did not trigger any constitutional protections under *Douglas.* *Id.* In order for Sales' constitutional rights to come in to play, the State must rely on evidence of J.H.'s unusual sexual knowledge in attempting to prove Sales' guilt. Here, the State did no such thing. Although during closing argument the prosecutor did question "how does a six and a nine year old know about putting a penis in someone's rectum?", defense counsel objected and the judge sustained the objection. Sales sought no other relief. Defense counsel neither requested a mistrial nor that the jury be instructed to disregard the prosecutor's comments. Thus, the judge properly

remedied the prosecutor's improper comment and we find no error. Point denied.

## Failure to Grant Mistrial

In his second point on appeal, Sales argues that the trial court erred when it overruled his request for a mistrial after Barbara Perusse, a DFS investigator, testified she found probable cause to believe that O.M. had been sexually abused.

Prior to trial, the State filed a motion to prevent the defense from presenting evidence concerning the credibility and suggestibility of child witnesses. The parties agreed that an expert should not be permitted to comment on the credibility of the complainants because to do so would invade the province of the jury. At trial, the State called Barbara Peruse, a DFS investigator, and the following exchange took place:

Question: And after you conducted your investigation, what findings did you make with regard to [O.M.]?

Answer: I felt there was probably [sic] cause for sexual abuse to [O.M.] by Richard Sales.

At this time, Sales' attorney objected and requested the court either "mistry the case or ask the jury to disregard that comment." (emphasis added). The court denied the motion for mistrial but did instruct the jury "to ignore any findings made by DFS." The judge further told them "the question of whether there was abuse or not is solely for you to decide."

## Standard of Review

We review a trial court's decision to deny a request for mistrial for an abuse of discretion only. *State v. Johnson*, 968 S.W.2d 123, 134 (Mo. banc 1998). A mistrial is a drastic remedy to be used only in extraordinary circumstances. *Id.*

We will not find that the trial court abused its discretion in refusing to grant a mistrial when it was not expressly requested to do so or where the request was for alternative relief and the judge granted one of the suggested alternatives. Sales' attorney requested that the court either mistry the case or instruct the jury to disregard Perusse's comment. The court chose the second alternative suggested by Sales. The trial judge did not abuse his discretion. Point denied.

## Sentencing as Persistent Offender

In his final point on appeal, Sales argues that the trial court erred in sentencing him as a persistent offender. Sales was convicted in 1992 of what was defined at the time as sodomy. Sales was charged with touching the victim's vagina with his hand. At the time of his sentencing for the abuse to J.H. and O.M. in 1999, Sales objected to being sentenced as a persistent offender, arguing that the state's proof was insufficient to establish him as a persistent sexual offender. The court took the issue under advisement and found him to be a persistent sexual offender.

Section 558.018.1 instructs a court to sentence any person who is convicted of the felony of rape, forcible rape, sodomy, forcible sodomy, statutory rape or statutory sodomy or the attempt to commit any of those crimes, to an extended term of imprisonment if the court finds such person to be a persistent sexual offender. Section 558.018.2 defines persistent sexual offender as one who has been previously convicted of rape, forcible rape, sodomy, forcible sodomy, or an attempt to commit any of those offenses.

In 1992 when Sales pled guilty to the crime of touching a victim's vagina with his hand, such action was defined as sodomy. In 1992 sodomy was defined as "**deviate sexual intercourse** with another person to

whom he is not married, without that person's consent by the use of forcible compulsion." § 566.010(2) RSMo 1986. Deviate sexual intercourse was defined as "any sexual act involving the genitals of one person and the mouth, tongue, **hand** or anus of another person." Section 566.010(2) RSMo 1986. In 1994 the Missouri legislature slightly changed its definition of deviate sexual intercourse to "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1) RSMo 1994, effective January 1, 1995. The 1994 definition excluded the word "hand." The 1994 definition of sexual contact was "any touching of another person with the genitals or any **touching** of the genitals or anus of another person ... for the purpose of arousing or gratifying sexual desire. § 566.010(3), RSMo 1994. Sexual contact, at that time, was an element of child molestation in the first and second degrees. Sections 566.067 and 566.068, RSMo 1994.

For his convictions of the abuse of J.H. and O.M., Sales was sentenced on December 17, 1999, at which time the 1994 definition was still in effect.[1]

Sales argues that at the time of his sentencing in this case, the crime to which he pled guilty in 1992, touching the victim's vagina with his hand, was no longer considered sodomy, and, therefore, did not place him under the definition of a persistent offender set forth in § 558.018.1. Sales contends that under Section 1.160,

RSMo 1994, he should have been sentenced as a prior offender rather than a persistent offender.

Section 1.160 states:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except:

(1) That all such proceedings shall be conducted according to existing procedural laws; and

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

Sales cites a number of cases in support of his contention that years after his conviction and sentence he should still receive the benefit of the amendatory law. See *State v. Rogers*, 964 S.W.2d 501 (Mo.App. 1998); *State v. Cline*, 808 S.W.2d 822 (Mo. banc 1991); *State v. Whardo*, 859 S.W.2d 138 (Mo. banc 1993). Despite his thorough discussion of each case, Sales fails to draw a necessary distinction between the law cited in these cases and his case before us. All three of the aforementioned cases involve situations where a defendant was charged and convicted under one statute, which was changed or altered prior to

---

**1.** It is worth noting, that the legislature again altered the definition of deviate sexual intercourse, which currently is: "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010, RSMo 2000, effective January 1, 2001.

sentencing. In these cases, the Missouri Supreme Court and the Court of Appeals found the defendants were entitled to sentencing under the amendatory law because the law had changed **before** they were sentenced. In Sales' 1992 case, however, he was both convicted and sentenced years before any change was made to the statute under which he was convicted. The definition of deviate sexual intercourse was not amended until nearly three years after his sentencing. Nevertheless, Sales argues that he should benefit from the amendatory law as he faces being sentenced as a persistent offender.

The State counters by arguing that the language of § 1.160 does not apply to Sales' situation. The State draws a distinct line between the cases affected by § 1.160 and Sales' case by explaining that Sales' prior conviction and sentence for sodomy in 1992 was valid and was not affected by § 1.160 because the law was not changed prior to sentencing. Further, the State cites supportive case law explaining that § 1.160 only allows a defendant to benefit from a lesser punishment provision in an amended law. However, even in the event that the court erred as to sentencing, the defendant would still be tried and convicted under the statute in effect at the time of the commission of the crime. Therefore his convictions would remain the same, only his punishment lessened. *State v. Phelps,* 965 S.W.2d 357, 359–60 (Mo. App.1998). "Section 1.160 only authorizes the reduction of the punishment; the offense itself, if committed prior to the amendment of a penal law, is unaffected by the amendment." *Id.* at 359 ( citing *State v. Sumlin,* 820 S.W.2d 487, 493 (Mo. banc 1991)).

At the time of both Sales' conviction and sentencing in 1992, the 1986 statute in effect defined hand to genital contact as sodomy. Because Sales admitted to touching the victim's genitals with his hand, he was convicted of sodomy and sentenced accordingly. Because the statutory change Sales relies upon did not take place before his sentencing, and, in fact, did not happen until nearly three years later, Sales is not now entitled to be treated as if he was not convicted of what the law then defined as sodomy and thus avoid the status of a persistent offender.

As mentioned above, in order for a defendant to be sentenced as a persistent offender, the State must prove beyond a reasonable doubt that he has been previously convicted of rape, forcible rape, sodomy, forcible sodomy, statutory rape, statutory sodomy or an attempt to commit any of those offenses. Here, the State conclusively proved that Sales was validly convicted of sodomy in 1992 and, therefore, could be sentenced as a persistent offender. Point denied.

The judgment is affirmed.

THOMAS H. NEWTON, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.