

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | | |
|---|---|---|---|
| STATE OF MISSOURI, | ) | | |
| | ) | | |
| Respondent, | ) | WD87113 | |
| v. | ) | | |
| | ) | **OPINION FILED:** | |
| | ) | **June 24, 2025** | |
| DERECK L. TURNAGE, | ) | | |
| | ) | | |
| Appellant. | ) | | |

**Appeal from the Circuit Court of Callaway County, Missouri
The Honorable Jeff Harris, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge,
Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge

Dereck Turnage appeals, following a jury trial, his conviction of first-degree

statutory rape, § 566.032,[1] for which the court sentenced him as a predatory sexual

offender to life imprisonment. Turnage raises two points on appeal. First, he argues that

the trial court erred in excluding, under § 491.015 (the rape shield statute), evidence of

Victim's prior sexual relationship as an alleged alternate source of Victim's pregnancy.

Second, he argues that the trial court erred in sentencing him as a predatory sexual

---

[1] All statutory references are to the Revised Statutes of Missouri, as updated
through the 2018 Cumulative Supplement, unless otherwise noted.

offender because the evidence was insufficient to establish the necessary statutory criteria for the recidivist designation. We affirm.

## Background[2]

On May 9, 2019, thirteen-year-old Victim went to the doctor with Mother about a possible urinary tract infection. While she was there, the doctor asked routine questions, including whether Victim was sexually active and when Victim experienced her last period. Because Victim indicated that she was sexually active and could not remember when she had her last period, the doctor also did a pregnancy test, which came back positive.[3] Victim falsely advised both the doctor and Mother that Ex-boyfriend was the father; she did not want to reveal that Turnage (her current boyfriend) was the father because she did not want him to get in any trouble.[4]

Following Victim's positive pregnancy test, the Audrain County Sheriff's office received a hotline call from Children's Division. The detective assigned to the case learned that Victim's relationship with Ex-boyfriend had ended in May or June of 2018 (approximately a year prior to the pregnancy test that initiated the investigation in this case) and that Victim began dating Turnage in November or December of 2018, when she was thirteen years old and Turnage was twenty-three years old. During an interview,

---

[2] Turnage does not challenge the sufficiency of the evidence supporting his conviction. The facts are presented "in the light most favorable to the jury's verdict." *State v. Gant*, 708 S.W.3d 899, 902 (Mo. App. W.D. 2025) (quoting *State v. Winfrey*, 337 S.W.3d 1, 3 (Mo. banc 2011)).

[3] Victim was approximately nine weeks pregnant at the time.

[4] Ex-boyfriend was later prosecuted for first-degree statutory rape based on his sexual relationship with Victim. Ex-boyfriend pled guilty to the reduced crime of fourth-degree child molestation under § 566.071.

Victim advised Detective that she and Turnage had had sex in two different hotels, at Victim's house, and at Turnage's apartment. Immediately after the interview concluded, Victim contacted Turnage and gave him Detective's contact information.

About an hour and a half after leaving the interview with Victim, Detective received a message from Turnage indicating he "wanted to get in front of the problem." Turnage contacted Detective again the next day, again indicating he wanted "to get out in front of this." Detective never had a face-to-face meeting with Turnage.

After further investigation, Detective learned that Turnage had four prior convictions from May 2016 for second-degree child molestation, each of which involved Turnage having sexual contact with a fourteen-year-old girl when he was eighteen years old.

The State charged Turnage as a predatory sexual offender with one count of first-degree statutory rape for engaging in sexual intercourse with Victim between November 24, 2018, and December 15, 2018.[5] Before trial, the State offered State's Exhibit 3, which evidenced Turnage's four prior convictions for second-degree child molestation, and the trial court found Turnage to be a predatory sexual offender under § 566.125.

Also before trial, the State filed a motion in limine under § 491.015 (the rape shield statute) to preclude Turnage from offering "any evidence of [Victim]'s prior sexual

---

[5] The basis for the charged dates were receipts for four separate overnights stays at the Holiday Inn Express in Kingdom City, Missouri, signed by Dereck Turnage. Victim testified at trial that Turnage took her to the Holiday Inn Express in Kingdom City on multiple occasions and that they had sex each time.

3

conduct or alleged sexual conduct with any party other than [Turnage]" on the grounds that it was prohibited by § 491.015 and there was no evidence that Victim had an ongoing sexual relationship with anyone other than Turnage during the charged period. The State acknowledged, however, that Turnage should be allowed to cross-examine witnesses regarding "the fact that Victim [] told other people that [Ex-boyfriend] was the father[,] as that evidence [wa]s relevant . . . to the credibility of the witness." But the State insisted that "[a]ny other arguments or inferences, other than credibility, would be violative of Missouri's Rape Sh[ie]ld protections[,] as they do not fall under any recognized exception pursuant to 491.015, RSMo."

In response, Turnage filed a motion seeking, under an exception to the rape shield statute, to cross-examine Victim and the State's witnesses "regarding statements she made at or near the beginning of the investigation . . . regarding others who she stated would or could be the source of the semen that resulted in her pregnancy." The trial court granted the State's motion and denied Turnage's motion, noting that "the questions would proceed, as the State has agreed to."

Following trial, the jury found Turnage guilty as charged, and the trial court sentenced him to life imprisonment without eligibility for parole for eighteen years. Turnage appeals.

**Analysis**

Turnage raises two points on appeal. First, he argues that the trial court erred in "excluding defense evidence that [Victim] had also had a sexual relationship with [Ex-boyfriend]" because the evidence was admissible "to show an alternative source of her

4

pregnancy." Second, he argues that the trial court erred in finding him to be a predatory sexual offender because his prior convictions for second-degree child molestation did not satisfy the definition of the offense as it existed at the time of his underlying charge.

## I. The trial court did not err, plainly or otherwise, in excluding evidence that Victim had a prior sexual relationship with Ex-boyfriend.

Ordinarily, we review the exclusion of evidence for an abuse of discretion. *State v. Fisher*, 705 S.W.3d 664, 680 (Mo. App. W.D. 2024). "A trial court abuses its discretion when its decision is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* (quoting *State v. Denham*, 686 S.W.3d 357, 371 (Mo. App. W.D. 2024)). The parties disagree, however, as to whether Turnage's first point on appeal is properly preserved for appellate review. The disagreement stems from whether Turnage made an adequate offer of proof below.

Section 491.015.3 requires the proponent of evidence purportedly falling within an exception to the rape shield statute to "file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury." To satisfy the offer-of-proof requirement of § 491.015.3, the defendant must present evidence showing (1) a relevant time frame, (2) relevant sexual activity, and (3) an identifiable sexual partner. *See State v. Miller*, 870 S.W.2d 242, 246 (Mo. App. S.D. 1994).

Here, Turnage filed a Motion to Admit Evidence Pursuant to Section 491.015, and the court held an extensive hearing on the motion. At the hearing, Turnage argued that the First Amended Information filed against Ex-boyfriend established that Ex-boyfriend

5

was an alternate source of Victim's pregnancy insofar as the First Amended Information alleged that sexual contact (specifically, penis to vagina) occurred between Ex-boyfriend and Victim on or about May 9, 2019. While the First Amended Information was appended as an exhibit to Turnage's motion, it was neither offered nor admitted into evidence at either the hearing or Turnage's trial. And, at the hearing, the Audrain County Prosecutor testified that the May 9, 2019 date alleged in the First Amended Information was a scrivener's error that had since been corrected through a nunc pro tunc order to reflect the accurate time period of June 1, 2018, through June 30, 2018 (approximately one year before Victim's positive pregnancy test). No other witnesses testified at the hearing; thus, Turnage's offer of proof failed to establish that Victim was having sexual intercourse with Ex-boyfriend during the relevant time period. But, regardless whether we review Turnage's Point I under plain error or the abuse of discretion standard, it does not merit relief.

The rape shield statute provides, "In prosecutions under chapter 566 . . . [,] evidence of specific instances of . . . [a victim's] prior sexual conduct . . . is inadmissible" at trial. § 491.015.1. This statute "creates a presumption that a victim's prior sexual conduct is not relevant to sex-crime prosecutions" unless the evidence falls within one of the statutory exceptions. *State v. Parry*, 703 S.W.3d 706, 711 (Mo. App. S.D. 2024) (quoting *State v. Rycraw*, 507 S.W.3d 47, 56 (Mo. App. E.D. 2016)). Here, Turnage argues that evidence of Victim's sexual relationship with Ex-boyfriend fell within the exception allowing "[e]vidence of specific instances of sexual activity showing alternative source or origin of . . . pregnancy." § 491.015.1(2). We disagree.

6

As noted above, there was no evidence presented that Victim was in a sexual relationship with Ex-boyfriend *at or around the time of conception* so as to establish Ex-boyfriend as an alternate source of Victim's pregnancy. The fact that she was in a sexual relationship with Ex-boyfriend *at an earlier time period* was simply not relevant for any purpose.

Turnage relies on *State v. Douglas*, 797 S.W.2d 532 (Mo. App. W.D. 1990), to support his claim that the exclusion of evidence deprived him of his right to a fair trial. While it is true that "the rape shield statute may not be applied so strictly as to deprive the defendant of the fair trial comprehended by the concept of due process," *id*. at 535, "[t]his judicially created exception to the rape shield statute has been narrowly interpreted." *Parry*, 703 S.W.3d at 712. Under this exception, if

> the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial.

*State v. Sales*, 58 S.W.3d 554, 559 (Mo. App. W.D. 2001). "[T]he judicially created 'right to a fair trial' exception to section 491.015 does not apply when the evidence is relevant merely to impeach a victim's credibility and does not directly refute evidence that tends to show a defendant's guilt." *State v. Cooper*, 581 S.W.3d 677, 682 (Mo. App. S.D. 2019).

When the State does not rely on the presence of semen, pregnancy, or disease to establish the defendant's guilt, excluding purported evidence of an alternate source of these things under § 491.015 does not violate the defendant's right to a fair trial. *State v.*

7

*Hannah*, 691 S.W.2d 345, 347 (Mo. App. E.D. 1985). In *Hannah*, the victim testified that, during the rape, the defendant withdrew and "semen was thereby deposited on clothing or furniture." *Id.* The defendant sought to introduce evidence at trial under the alternate-source-of-semen exception in § 491.015.1(2) that the victim "may have engaged in sexual activity three days prior to the date of the offense." *Id.* The Eastern District rejected his claim on the ground that the State "did not introduce the victim's clothing into evidence and made no effort to support its case by introducing evidence of defendant's semen on the victim's clothing or elsewhere." *Id.* The court concluded that, "[t]o show an alternative source of semen therefore was irrelevant to any material fact or issue." *Id.* Additionally, the court noted that the exclusion of the victim's prior sexual conduct "did not hinder [the] defendant's right to offer the physical evidence of the prosecuting witness'[s] clothing and the results of tests he may have employed to prove that her story was not true." *Id.* Thus, the defendant failed to prove that the exclusion of evidence under § 491.015 violated his right to a fair trial. *Id.*

Here, even if there had been evidence of a continuing sexual relationship between Victim and Ex-boyfriend during the relevant time frame, its exclusion would not have violated Turnage's right to a fair trial because the State did not rely on Victim's pregnancy to establish Turnage's guilt. The State charged Turnage with having sexual intercourse with Victim during the time period of November 24, 2018, through December 15, 2018. Victim's pregnancy, which was approximately nine weeks along, was not discovered until May of 2019, meaning that *none* of the sexual conduct underlying the charge against Turnage could have been the source of her pregnancy.

8

Additionally, there was no paternity testing conducted to establish that Turnage contributed to Victim's pregnancy. In fact, the only reason the pregnancy was relevant at all was to give context to the origin of the State's investigation. Thus, just as the State did not rely on the presence of semen in *Hannah* to establish the defendant's guilt, the State here did not rely on Victim's pregnancy to establish Turnage's guilt. Accordingly, exclusion of evidence—if any existed—that Victim was in a continuing sexual relationship with Ex-boyfriend would not have violated Turnage's right to a fair trial.

Furthermore, the State conceded that Victim's initial statement identifying Ex-boyfriend as the father was both relevant and admissible to impeach Victim's credibility, given her later statement that Turnage was the father, and Turnage presented this evidence at trial. The only evidence he was not allowed to present was that Victim actually engaged in a sexual relationship with Ex-boyfriend. And exclusion of this evidence did not hinder his ability to impeach Victim's credibility with her prior inconsistent statement.

Because Turnage failed to establish that Victim was in a sexual relationship with Ex-boyfriend during the relevant time frame and because the State did not rely on Victim's pregnancy to establish Turnage's guilt of the charged offense, the trial court committed no error, plain or otherwise, in excluding evidence of Victim's prior sexual conduct with Ex-boyfriend.

Point I is denied.

**II.    The evidence was sufficient to support the trial court's finding that Turnage was a predatory sexual offender.**

In his second point on appeal, Turnage argues that the trial court erred in finding him to be a predatory sexual offender because the evidence was insufficient to support the finding.  We disagree.

The State argues that Turnage's claim of error in Point II is not preserved for our review because he did not object when the evidence of his prior convictions was offered, nor did he include this claim in his motion for new trial.  But "[a] sufficiency of the evidence challenge . . . does not need to be included in a motion for a new trial to preserve the claim for appeal."  *State v. Nowicki*, 682 S.W.3d 410, 414 (Mo. banc 2024).  It does not matter that Turnage's claim is directed at the sufficiency of the evidence to enhance his sentence, rather than sufficiency of the evidence to support his conviction.  *Id*.  Our review is the same.  *Id*.  We "must make a *de novo* determination whether the evidence is sufficient to permit a reasonable fact-finder to find the necessary facts beyond a reasonable doubt."  *Id*.  "In doing so, [we] accept as true all evidence tending to prove those facts and . . . draw all reasonable inferences in favor of finding those facts."  *Id*.  To the extent the claim involves interpretation of a statute, our review is also *de novo*.  *State v. Johnson*, 524 S.W.3d 505, 510 (Mo. banc 2017).

As is relevant here, "[t]he court shall sentence a person to an extended term of imprisonment . . . if it finds the defendant is a predatory sexual offender and has been found guilty of committing . . . [statutory rape in the first degree]."  § 566.125.1, .4.  A predatory sexual offender "is a person who . . . [h]as previously been found guilty of . . .

committing child molestation in the first or second degree" or one who "[h]as previously committed an act which would constitute [child molestation in the first or second degree or sexual abuse when classified as a class B felony], whether or not the act resulted in a conviction." *Id*. § .5(1), (2).

Here, it is undisputed that the jury found Turnage guilty of first-degree statutory rape. Thus, the only issue before us is whether the evidence was sufficient to prove that he either was previously found guilty of committing child molestation in the second degree or had committed an act which would constitute child molestation in the first or second degree or sexual abuse when classified as a class B felony so as to render him a predatory sexual offender.

Turnage argues that his prior convictions of second-degree child molestation are insufficient to support a finding that he is a predatory sexual offender because the conduct underlying those offenses did not satisfy the definition of second-degree child molestation in effect at the time of his charged offense against Victim in this case. The State concedes that the conduct supporting Turnage's prior offenses would not support convictions of second-degree child molestation under the statute in effect at the time he committed the underlying statutory rape but argues that the difference is irrelevant, as the plain language of the statute requires only a prior finding of guilt of "child molestation in the . . . second degree," which Turnage has. Thus, to decide Turnage's Point II, we must determine the legislative intent behind § 566.125.

"Legislative intent is 'reflected in the plain language of the statute at issue.'" *State v. Heathcock*, 708 S.W.3d 163, 167 (Mo. banc 2025) (quoting *Johnson*, 524 S.W.3d at

11

510.) "When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *Id*. (quoting *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 724 (Mo. banc 2017)). We "must give meaning to every word or phrase of the legislative enactment." *Id*. (quoting *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013)). And, "[w]hen the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Id*. (quoting *Johnson*, 524 S.W.3d at 511).

Here, as the State points out, the plain language of the statute indicates that a person is a predatory sexual offender if he "[h]as previously been found guilty of committing . . . child molestation in the . . . second degree." Turnage does not dispute that he was found guilty of four counts of child molestation in the second degree on May 18, 2016. There is no further requirement in the statute. Thus, under the plain language, the evidence was sufficient to support the trial court's finding that Turnage is a predatory sexual offender.

This interpretation is supported by our prior decision in *State v. Sales*, 58 S.W.3d 554 (Mo. App. W.D. 2001). In *Sales*, the defendant was found to be a persistent sexual offender based on a prior conviction of sodomy. *Id*. at 560. At the time of his sentencing on the charged offenses, the definition of deviate sexual intercourse had changed such that the conduct he engaged in during the prior offense no longer constituted the offense

of sodomy.[6]  *Id*. at 561.  As a result, the defendant argued that the evidence was insufficient to support sentencing enhancement as a persistent sexual offender.  *Id*.  This court rejected his argument, noting that,

> in order for a defendant to be sentenced as a persistent offender, the State must prove beyond a reasonable doubt that he has been previously convicted of . . . sodomy . . . .  Here, the State conclusively proved that Sales was validly convicted of sodomy in 1992 and, therefore, could be sentenced as a persistent offender.

*Id*. at 562.

Turnage argues that this interpretation leads to an absurd result because it renders "the elements and the conduct of the prior conviction . . . irrelevant."  While we agree that the result may seem somewhat at odds with the purpose of recidivist statutes "to deter repeat offenders," *Rummel v. Estelle*, 445 U.S. 263, 284 (1980), and "assess greater penalties against those defendants with an established history of [similar] conduct," *State v. Brown*, 97 S.W.3d 97, 103 (Mo. App. W.D. 2002), we also presume that the legislature knew what the law was when it enacted § 566.125.5(1), *see State v. Wright*, 484 S.W.3d 817, 820 (Mo. App. E.D. 2015), and recognized that the elements of the offense of child molestation in the second degree had changed.[7]  Yet, despite this knowledge, the

---

[6] The defendant had engaged in hand-to-genital contact for his prior offense.  *State v. Sales*, 58 S.W.3d 554, 560 (Mo. App. W.D. 2001).  Two years later, the legislature amended the definition of deviate sexual intercourse to exclude the word "hand," making the defendant's underlying conduct no longer the offense of sodomy at the time he was sentenced for the charged offenses.  *Id*. at 561.

[7] Section 566.125 was enacted as part of SB491 in 2014, which overhauled Missouri's criminal laws.  It was in that same bill that the offense of child molestation in the second degree was changed from a class A misdemeanor to a class B felony with different elements. 2014 Mo. Legis. Serv. S.B. 491.

legislature chose to place no limits on the nature of the prior offense, as it had done before.[8]  From the inception of the predatory sexual offender enhancement provision, the legislature has consistently "sought to expand the circumstances under which a defendant might be subject to an extended term of imprisonment." *State v. Yocco*, 698 S.W.3d 819, 846 (Mo. App. E.D. 2024).  Allowing enhancement based solely on the name of an offense for which a defendant was previously found guilty without regard to the elements or conduct underlying that offense is consistent with that purpose.

In fact, the same approach has been used with respect to finding a defendant to be a prior offender for sentencing purposes.  *See, e.g., State v. Grubb*, 120 S.W.3d 737, 739 (Mo. banc 2003) (holding that, "[u]nder the plain language of [former] section 556.016.2 [defining a "prior offender" as "one who has pleaded guilty to or has been found guilty of one felony"], convictions may be considered felonies if they are either *labeled* as felonies or if persons convicted of them may be sentenced to death or imprisonment for a term in excess of one year," thus satisfying the definition of "felony" (emphasis added)); *State v. Taylor*, 781 S.W.2d 229, 232 (Mo. App. W.D. 1989) (holding that a prior Arkansas conviction that was a felony in Arkansas but not in Missouri still satisfied the

---

[8] *See, e.g.,* § 558.018.1(2)-(6), RSMo 2000 (the predecessor to current § 566.125), which expressly limited the definitions of prior offenses by date, such as

> (2) Rape in the first degree or sodomy in the first degree attempted or committed on or after August 28, 2013; (3) Forcible rape committed or attempted any time during the period of August 13, 1980 to August 27, 2013; (4) Forcible sodomy committed or attempted any time during the period of January 1, 1995 to August 27, 2013; (5) Rape committed or attempted before August 13, 1980; (6) Sodomy committed or attempted before January 1, 1995.

requirement that a prior offender has been found guilty of one felony because the prior offense was labeled a felony); *State v. Rellihan*, 662 S.W.2d 535, 546 (Mo. App. W.D. 1983) (holding that "the definition of the term felony within § 558.016.2 is not limited by, nor does it require, a finding that the previous conviction under another jurisdiction, either federal or state, is also a felony under Missouri law"; therefore, a trial court may find a defendant to be a prior offender if "the accused stands convicted of a previous felony from any other jurisdiction (i.e., federal or sister state), *without* any additional proof or showing that the prior felony conviction is also a felony under Missouri law." (Emphasis in original.)).

Turnage further argues that looking at either the underlying elements or conduct is necessary to capture "out-of-state prior conviction[s] . . . *called* something [else] like Sexual Assault of Child," pointing to a Wisconsin statute as an example. But, in making this argument, Turnage overlooks § 566.125.5(2), which allows a court to find a defendant to be a predatory sexual offender if he "[h]as previously committed an act *which would constitute an offense listed in subsection 4 of this section*, whether or not the act resulted in a conviction." (Emphasis added.) Under this subsection, a court may look at the underlying conduct and elements of a foreign conviction to determine if the foreign conviction satisfies Missouri's definition of the listed qualifying offenses for purposes of sentence enhancement. *See Brown*, 97 S.W.3d at 102 (holding that "[a] foreign conviction may qualify as one of the crimes enumerated under section 558.018, RSMo 2000," the predecessor to § 566.125).

And that is exactly what this court did in *State v. Heckenlively*, 83 S.W.3d 560 (Mo. App. W.D. 2002), one of the principle cases upon which Turnage relies. In *Heckenlively*, the State charged the defendant as a persistent sexual offender based upon prior convictions out of California for "[f]ive counts of child molestation; two counts of forceful sexual penetration; and one count of oral copulation." *Id*. at 568. The defendant argued that his California convictions did not meet Missouri's definition of sodomy because, at the time he committed his offenses in California, Missouri's definition did not include the underlying conduct in which he engaged. *Id*. at 570. We rejected his claim, holding that

> the critical question is not whether [the defendant's] conduct in California
> met Missouri's definition of sodomy when those crimes were committed in
> the late 1980's, but whether his conduct met Missouri's definition of
> statutory sodomy, first degree, in 1996 and 1997, when the crimes charged
> in this case were alleged to have been committed.

*Id*. Accordingly, we compared the conduct and elements underlying the defendant's California offenses to the applicable Missouri law as it existed at the time of his charged offenses and determined that "his acts would fit under the definition of first[-]degree statutory sodomy in Missouri at the time the crimes in this case were committed." *Id*. Therefore, we affirmed the trial court's finding that the defendant was a persistent sexual offender. *Id*.

The same approach was again used in *State v. Hurst*, 195 S.W.3d 537 (Mo. App. E.D. 2006) (the other case upon which Turnage relies) but for a prior Missouri conviction. In *Hurst*, the defendant challenged the trial court's finding that he was a predatory sexual offender, arguing that "the State's evidence showed that he had

16

previously pleaded guilty to first-degree child molestation when it was classified as a C felony"; therefore, the State failed to prove he met the definition of a predatory sexual offender, which, at the time, allowed for enhancement based on prior offenses of child molestation in the first degree when classified as a B felony. *Id*. at 539. But, relying on § 558.018.5(3),[9] this court considered whether the underlying conduct of the prior offense satisfied the definition of class B child molestation in the first degree as it existed at the time of the defendant's charged crimes. *Id*. Upon determining that the conduct *did* satisfy the existing definition, the court affirmed the trial court's finding that the defendant was a predatory sexual offender. *Id*. at 540.

While both of these cases are instructive, neither addresses the situation at hand. Unlike Turnage's prior offense, none of the prior offenses in *Heckenlively* or *Hurst* were expressly named in the applicable recidivist statutes. Thus, the courts had to look to the underlying conduct and compare it to the elements of the named offenses to determine if the prior offenses constituted sufficient evidence to find the defendants persistent or predatory sexual offenders. In doing so, the courts looked to the offense definitions at the time of the defendants' charged conduct, which is consistent with the approach required by § 566.125.5(2). But neither of these cases addresses the situation here, where the defendant's prior offense is a named offense in the applicable recidivist statute.[10]

---

[9] At that time, § 558.018.5(3), RSMo 2000, used the same language as § 558.018.5(2) but for multiple victims: a predatory sexual offender was defined as one who "committed an act or acts against more than one victim which would constitute an offense or offenses listed in subsection 4 of this section."

[10] Turnage argues that *State v. Shepherd*, 643 S.W.3d 346 (Mo. banc 2022), stands for the proposition that courts *must* look at whether the conduct underlying prior

convictions satisfies the definition of enhancement offenses at the time of the charged conduct, regardless of any offense labels. While the *Shepherd* court held that "it is the state's burden to prove . . . that the conviction arose from conduct that meets the definition of an I[ntoxication ]R[elated ]T[raffic ]O[ffense] under Missouri law at the time of the present offense," *id*. at 351 (internal citation omitted), *Shepherd* did *not* address the issue present in Turnage's case.

*Shepherd* analyzed whether the defendant's prior Colorado convictions for "driving while under the influence of alcohol and/or drugs" and "driving while ability was impaired by alcohol and/or drugs" met the definition of "intoxication related traffic offenses" for purposes of enhancing his sentence as a habitual offender under § 577.010. *Id*. at 348. "Intoxication related traffic offenses" were defined as

> driving while intoxicated, driving with excessive blood alcohol content, driving under the influence of alcohol or drugs in violation of a county or municipal ordinance, or an offense in which the defendant was operating a vehicle while intoxicated and another person was injured or killed in violation of any state law, county or municipal ordinance, any federal offense, or any military offense.

§ 577.001(15), RSMo Supp. 2017. The Court noted that,

> Missouri law contemplates four categories of conduct that qualify as IRTOs: (1) driving while intoxicated; (2) driving with excessive blood alcohol content; (3) driving under the influence of alcohol or drugs in violation of a county or municipal ordinance;[] and (4) operating a vehicle while intoxicated and another person was injured or killed in violation of any state law, county or municipal ordinance, any federal offense, or any military offense.

*Shepherd*, 346 S.W.3d at 349.

The defendant's prior convictions could not fall within either (3) or (4) because they involved violations of state law (not county or municipal ordinance) and no one was injured or killed as a result. *Id*. at 350. Furthermore, none of his prior convictions were labeled "driving while intoxicated" or "driving with excessive blood alcohol content." Thus, unlike the facts before us, the *Shepherd* court was not dealing with a prior conviction that was an offense expressly named in § 577.001(15). Accordingly, just as in *Heckenlively* and *Hurst*, the court analyzed whether the *conduct* underlying the convictions satisfied Missouri's definitions at the time of his underlying offense. *Id*. at 349-50.

Additionally, the court rejected the defendant's argument that the conduct underlying a prior conviction must not only meet the definition of an intoxication related traffic offense but also "be a crime under Missouri law at the time of the present offense,"

The plain language of § 566.125.5 is clear:  a trial court may find a person to be a predatory sexual offender if the person *either* was previously found guilty of an offense named in § 566.125.4 (as in *Sales*) *or* previously committed acts that would constitute one of the named offenses in § 566.125.4 (as in *Heckenlively* and *Hurst*).  § 566.125.5(1)-(2).  Adopting Turnage's interpretation of § 566.125 would render § 566.125.5(1) meaningless, contrary to our presumption that "the legislature did not intend to use superfluous, meaningless, and redundant language."  *Moore v. State*, 318 S.W.3d 726, 731 (Mo. App. E.D. 2010).  Simply put, "[t]he Legislature is conclusively presumed to have intended what it plainly and unambiguously said.  If the statute so written needs alteration, it is for the Legislature, and not the court, to make it."  *State v. Chambers*, 437 S.W.3d 816, 820 (Mo. App. W.D. 2014) (quoting *Roberson v. State*, 989 S.W.2d 192, 194 (Mo. App. S.D. 1999)).  "Our courts cannot read into a statute words not found within the statute when the language of the statute is clear."  *Rellihan*, 662 S.W.2d at 545.  Because § 566.125.5 plainly allows a court to find a defendant to be a predatory sexual offender upon proof that he has previously been found guilty of a named offense in § 566.125.4, without any further proof of either the elements or underlying conduct supporting the prior offense, and because Turnage was previously found guilty of an

---

expressly overruling any cases that suggested otherwise.  *Id*. at 351 n.10.  This is the same argument Turnage advances:  because the conduct underlying his prior convictions of second-degree child molestation no longer constituted an offense at the time of his charged crime, they could not be used for purposes of sentence enhancement.  Accepting Turnage's argument would directly conflict with the Missouri Supreme Court's express determination in *Shepherd* that prior convictions need not constitute a present Missouri offense in order to satisfy a sentencing enhancement requirement.

19

offense named in § 566.125.4, the evidence was sufficient to support the trial court's finding that Turnage was a predatory sexual offender.

Point II is denied.

## Conclusion

The trial court did not err, plainly or otherwise, in excluding evidence under the rape shield statute or sentencing Turnage as a predatory sexual offender. The court's judgment is affirmed.

_____
Karen King Mitchell, Presiding Judge

Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge, concur.