**STATE of Missouri, Respondent,**

v.

**Jimmie CAMPBELL, Appellant.**

**No. WD 62694.**

Missouri Court of Appeals,
Western District.

Sept. 14, 2004.

The evidence against Campbell, viewed in the light most favorable to the verdict, is as follows. Between the years of 1995 and 1998, when Kathleen was twelve to fourteen years old, her father sexually abused her repeatedly. Kathleen testified that several times in the fall of 1995 and early in 1996, Campbell came into her room and touched her vagina and made her touch his penis. Sometime later in 1996, Campbell forced Kathleen to have sexual intercourse with him for the first time. Kathleen recounted that Campbell came into her room late at night and told her that he and her mother had decided upon a suitable punishment for her. She said "no," she did not like the punishment. But Campbell held Kathleen down and took her clothes off after she refused to do so. He then held her hands over her head with one hand, spread her legs with the other, and raped her. Kathleen said that Campbell forced her to have sexual intercourse with him on several occasions after that, both at home and in his over-the-road truck. She stated that although she resisted at first, she eventually stopped, because Campbell was stronger than she was and because the more she resisted, the more it hurt.

According to Kathleen, Campbell also showed her a pornographic tape four or five times and required her to imitate what she was watching. Campbell also, on several occasions, required Kathleen to read pornographic booklets to him, the primary subject of which was incestuous relationships. At various times during this three year period, Campbell sodomized Kathleen by inserting a variety of objects into her vagina. On separate occasions, Campbell

Kent Denzel, Asst. State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Leslie E. McNamara, Asst. Attorney General, Jefferson City, MO, for respondent.

Before PATRICIA BRECKENRIDGE, P.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

JAMES M. SMART, JR., Judge.

Jimmie Campbell appeals his convictions for one count of forcible rape and five counts of forcible sodomy. The judgment is affirmed.

### Statement of Facts

Campbell was charged by information with one count of forcible rape, § 566.030, RSMo 2000,[1] and five counts of forcible sodomy, § 566.060. These charges were the result of accusations brought by Campbell's daughter, Kathleen, in June 2002.[2] A jury found Campbell guilty of all charges on January 31, 2003, and recommended sentences of thirty years for the rape charge and fifteen years for each of the sodomy charges. The court sentenced Campbell in accordance with the jury's recommendation and ordered all sentences to be served consecutively.

---

1. All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise indicated.

2. The victim in this case was raised as Campbell's daughter. Around the same time that she brought these accusations, she learned that Campbell is not her biological father. The names of the victim and her sisters may have been changed in this opinion to protect their privacy.

inserted his fingers, a toothbrush, a pencil, and a dildo. Campbell also forced Kathleen to perform oral sex on him, threatening to beat her if she did not comply. Kathleen again tried to resist by saying "no" and attempting to fight him off when she got older, but Campbell just held her harder, she said, leaving bruises. Kathleen never told anyone about the abuse while she lived at home. However, after she moved out of the house in 2002, she pressed charges when her sister Courtney encouraged her to do so.

At trial, Kathleen's mother and two of her sisters testified as to Campbell's physical abuse of the family. Kathleen's sister Courtney testified that Campbell had introduced her to pornography when she was just eight years old. Campbell's friend testified about a box of pornography that was brought to his house by Kathleen's mother after Campbell was arrested. (Kathleen's mother stated that she did so because she "didn't want" the pornographic items). The State also presented the testimony of Arthur Geisendorfer, the police detective who investigated the case.

Campbell did not testify in his own defense, but presented several witnesses in an effort to attack Kathleen's credibility.

Campbell was convicted of all charges and sentence was pronounced. His motion for new trial was denied, and he now appeals.

### Insufficient Evidence to Establish "Forcible" Sodomy

Campbell's first point is that the evidence was insufficient to support his conviction on four of the forcible sodomy counts. Campbell contends that the State failed to establish beyond a reasonable doubt that he used "forcible compulsion" when he inserted the various objects into Kathleen's vagina. According to Campbell, there was no evidence that he had

used any force or that Kathleen had offered any resistance.

### Standard of Review

When reviewing the sufficiency of the evidence, we accept as true all of the evidence and inferences that are favorable to the State and disregard all evidence and inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). We are limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

### Analysis

Campbell was charged with five counts of forcible sodomy. Four of those counts were based on allegations that Campbell inserted various objects into Kathleen's vagina on four separate occasions. The fifth count was based on Kathleen's accusation that Campbell forced her to perform oral sex on him. Kathleen testified that Campbell threatened to beat her if she refused to perform oral sex, but she made no such allegations with regard to the other instances of sodomy.

Pursuant to section 566.060, a person commits the crime of forcible sodomy if he "has deviate sexual intercourse with another person by the use of forcible compulsion." "Forcible compulsion" is defined as either (a) "[p]hysical force that overcomes reasonable resistance" or (b) a "threat, express or implied, that places a person in reasonable fear of death [or] serious physical injury...." § 556.061(12).

Campbell notes that the State is required to prove every element of the crime and contends that the State failed to prove the element of forcible compulsion. He claims there was insufficient evidence that he used "physical force that overcomes

reasonable resistance" as to these four acts. The Court in *State v. Niederstadt*, 66 S.W.3d 12 (Mo. banc 2002), was faced with the same question. There, the sixteen-year-old victim had been sent to live with the abuser while her parents were out of the country. *Id.* at 14. She had been subjected to repeated beatings and threats prior to the sexual assaults and was totally dependent upon the much older defendant for her subsistence. *Id.* at 15. The *Niederstadt* Court applied a "totality of the circumstances" test, and considered the following factors: (1) whether violence or threats preceded the sexual act; (2) the relative ages of the victim and accused; (3) the atmosphere and setting of the acts; (4) the extent to which the accused was in a position of authority, domination, and control over the victim; and (5) whether the victim was under duress. *Id.* The Court found ample evidence of forcible compulsion in that case. *Id.* at 15–16.

The totality of the circumstances in this case shows that Kathleen was twelve when the abuse began, while her abuser was much older. Kathleen's abuser, her father, was in a position of authority, dominion, and control over her. He had previously physically forced her to have sexual intercourse with him. He threatened to beat her up if she did not perform oral sex on him. The atmosphere of the home where the abuse occurred was one in which the abuser often used physical violence, and the victim was certainly under duress.

■ The evidence shows that Kathleen had attempted earlier to resist the abuse, but her resistance was overcome by physical force and implied and express threats of physical force. The first time Campbell forced her to have sexual intercourse, she resisted, but he overcame that resistance by use of physical force. She continued to resist until she finally determined that it was futile because of his superior strength and that it hurt more when she resisted. Campbell also threatened to beat her if she refused to perform oral sex. Kathleen had seen Campbell hit her mother and throw glasses at her. She was aware that Campbell had stomped on her mother's face with a boot, leaving a mark. She testified that Campbell showed her a picture of the injury, warning her that "this is what happens when you are not good." Kathleen's mother and two sisters testified that Campbell physically abused them as well. Kathleen did not physically resist when Campbell inserted the items into her vagina because of fear and because she knew from prior incidents that it would be futile. A victim is not required to physically resist where she submits to an offensive act out of fear of personal harm. *State v. Thiele*, 935 S.W.2d 726, 729 (Mo. App.1996).

While there was no testimony from Kathleen either that she resisted or that Campbell used physical force to sodomize her on these four occasions, there was an ever-present "implied threat" that would have placed her in reasonable fear of serious physical injury to herself. *See* § 556.061(12)(b). Campbell had previously used physical force to overcome her resistance, had threatened that he would beat her if she did not consent to oral sex, and was often physically violent with other family members. These circumstances constitute "forcible compulsion" in that they created an implied threat of serious physical injury to Kathleen if she resisted.

The evidence was sufficient for a reasonable juror to have found the defendant guilty of forcible sodomy beyond a reasonable doubt. Point denied.

### Inadmissible Evidence

In both Points II and III, Campbell argues that the court erred in admitting

evidence of his prior bad acts or uncharged misconduct. He first complains that the trial court abused its discretion in admitting testimony about Campbell's physical abuse of his wife and daughters. Second, he contends that the court plainly erred in admitting evidence and testimony about his possession and use of pornography. Campbell contends, as to both points, that the evidence was not probative of the crimes with which he was charged. Alternatively, he argues that its prejudicial effect outweighed its probative value because it was offered solely to portray him as an abusive man of bad character.

### Standard of Review

The trial court is afforded broad discretion in assessing the relevance and admissibility of evidence, and its decision to admit or exclude evidence will be affirmed absent a clear abuse of discretion. *See State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001); *State v. Hayes*, 88 S.W.3d 47, 60 (Mo.App.2002). Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances and is arbitrary and unreasonable. *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992).

Campbell concedes that he failed to properly preserve the pornography issue for appellate review, but requests a review of the matter for "plain error." Rule 30.20 allows this court to consider, at its discretion, obvious errors affecting substantial rights when it finds that manifest injustice or a miscarriage of justice has resulted therefrom. The appellant bears the burden of proving the existence of such a manifest injustice or miscarriage of justice. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App.2004). To establish plain error based on the erroneous introduction of evidence, there must be apparent prejudice to the defendant. *Id.* at 741.

### Uncharged Prior Misconduct or Bad Acts

As a general rule, evidence of uncharged misconduct or prior bad acts is inadmissible to show that the defendant has a propensity to commit such acts. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Introduction of such evidence for that purpose alone violates the defendant's right to be tried only for the offense charged. *State v. Barriner*, 34 S.W.3d 139, 144 (Mo. banc 2000). Such evidence is admissible, however, if it is both logically and legally relevant to prove the crime charged. *Id.* Evidence is logically relevant if it has a *legitimate* tendency to directly establish the defendant's guilt of the crime charged. *Bernard*, 849 S.W.2d at 13. The evidence has a legitimate tendency to establish guilt where the tendency is based on something other than the idea that the defendant has poor character, and therefore, is likely guilty of the offense charged. *See Barriner*, 34 S.W.3d at 144–45. Evidence is legally relevant if its probative value outweighs its prejudicial effect. The balancing of the evidence's probative value against its prejudicial effect on the jury rests within the sound discretion of the trial court. *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002).

### Testimony about Physical Abuse

In addition to Kathleen's testimony about Campbell's acts of physical abuse, Campbell also complains about similar testimony from Kathleen's sisters and mother. Both Kathleen's older sister Courtney and her mother discussed Campbell's assault on the mother that resulted in a mark on her face. The mother testified that the children were aware of the assault. Courtney also testified that Campbell would sometimes knock people across the room or hit or paddle them. She

stated that Campbell hit her mother, threw things at her, and choked her. Kathleen's younger sister Sonora described two incidents when Campbell got mad and punched her in the stomach, once shortly after she had surgery.

The testimony about Campbell's physical abuse was logically probative as to a disputed issued in the case: whether Campbell used forcible compulsion to commit his acts of sodomy on Kathleen. In order to determine whether the element of forcible compulsion has been proven, we must consider the "totality of the circumstances." *See Niederstadt*, 66 S.W.3d at 15. Here, the evidence was probative as to four of the five *Niederstadt* factors: whether violence or threats preceded the sexual acts; the atmosphere in the home where the acts occurred; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress. The evidence was relevant to explain why Kathleen did not consistently resist the sexual abuse and why she failed to report it to her mother or anyone else until after she had moved out of the family home.

### Evidence of Pornography

■ Kathleen testified that her father made her watch pornography and read pornographic stories to him. She described her father's booklets that contained stories of sexual acts between family members. Campbell required Kathleen to read the stories to him while they were in his truck, and sometimes he masturbated as she read to him. She also testified that four or five times he made her watch a pornographic film with him and required her to try to imitate what she was seeing on the film. Courtney also testified about

pornography. She testified that when she was eight years old, her father allowed her to stay in the room while he and a friend were watching a pornographic version of "Cinderella." Courtney testified that she, too, had seen the booklets with the "sexual stories" in them.[3]

■ The prosecutor is entitled "to present a complete and coherent picture of the events that transpired." *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994). The State sought to show that pornography was an instrumental part of Campbell's sexual abuse of his daughter. Evidence of instances when he used pornography to teach Kathleen what he wanted her to do and of the pornographic booklets that detailed incestuous relationships was logically relevant to present a complete picture of the incestuous and abusive relationship. It also could have been relevant to explain why Kathleen failed to report the abuse until she moved out of the family home in that the pornography may have been used to make her believe that incestuous behavior was commonplace. The evidence that pornography was used directly in conjunction with the sexual acts was relevant.

■ Courtney's testimony was also logically relevant. Because Kathleen was the only witness to the sexual abuse and because the appellant attacked her credibility, Courtney's testimony about the pornography was relevant to corroborate Kathleen's testimony. Evidence is logically relevant if it tends to corroborate evidence that itself is relevant and bears on the principal issue of the case. *Tisius*, 92 S.W.3d at 760.

Evidence is also logically relevant if it tends to make the existence of any fact that is pertinent to the determination of

---

3. Campbell's friend also testified about a box of pornography that was brought to his house by Campbell's wife. However, Campbell does not complain about this testimony.

the action more or less probable than it would be without the evidence. *Id.* The evidence of common physical abuse in the household and the children's exposure to pornography was logically relevant and highly probative because these acts were closely related to the crimes themselves. The high degree of probative value, in both instances, outweighed any prejudicial effect it may have had. We cannot say that the trial court plainly erred or abused its considerable discretion in making this determination.

### Expert Witness Testimony

In his fourth point, Campbell contends that the court abused its discretion in admitting expert testimony from Detective Geisendorfer about the common behaviors of child sex victims or their abusers. He claims that there was no showing that the detective had any expertise that would render him competent to express an opinion on that subject.

### *Standard of Review*

In general, it is within the trial court's sound discretion to admit or exclude the testimony of an expert. *State v. Hayes,* 88 S.W.3d 47, 61 (Mo.App.2002). Expert testimony "is always fraught with questions of relevancy and competency," and the trial court's exercise of its discretion in this regard will not be overturned on appeal absent an abuse such discretion. *Id.*

### *Analysis*

■ At trial, the defense objected to the proposed testimony of the detective because (1) he was not qualified as an expert on the subject about which he would testify and (2) the State had not previously disclosed that he would be testi-

fying as an expert. On appeal, Campbell essentially abandons his failure-to-disclose argument in that he does not include it in his point relied on and mentions it only in passing in his argument.[4] Thus, we limit our analysis to his claim that the detective was unqualified to testify as an expert in the area of child sexual abuse.

■ "The test of whether a witness is qualified as an expert is whether the witness has knowledge or skill from education or experience that will aid the trier of fact." *Hayes,* 88 S.W.3d at 62. An expert may be qualified to offer testimony on the basis of practical experience alone. *Id.; see also* 19 MISSOURI PRACTICE, CRIMINAL PRACTICE AND PROCEDURE, § 457, *Expert Testimony* (2d ed.1995) ("a witness may be competent to testify as an expert though his knowledge touching the question at issue may have been gained by practical experience rather than by scientific study or research"). The question of an expert's qualifications rests largely in the sound discretion of the trial court. *State v. Albanese,* 920 S.W.2d 917, 927 (Mo.App.1996).

Here, the State established that Detective Geisendorfer had been a police officer for twenty-five years; that he had been working in the area of child sexual abuse for thirteen years; and that he investigates or assists in the investigation of thirty to forty cases of sexual assault and child abuse each year. The court allowed the detective to testify based on his knowledge, experience, and training. Relying on his experience and observations, the detective explained why reporting is often delayed and why the mother in such cases often allows the abuser to remain in the home. He also explained how a sexually abusive relationship between family mem-

---

**4.** Campbell presents no authority requiring that the State categorize its anticipated witnesses as expert versus non-expert. *See State*

*v. Enke,* 891 S.W.2d 134, 137 (Mo.App.1994); Rule 25.03.

bers typically progresses and noted that it "could possibly" progress to the parent using pornography to desensitize the child.

In *State v. Seddens*, 878 S.W.2d 89 (Mo. App.1994), the Eastern District held that a police officer was competent to testify as an expert on gang-related activities in a homicide trial based only on his previous experience in investigating the criminal activities of gangs and on the fact that he had interviewed over sixty gang members. *Id.* at 92–93. Similarly, in light of his extensive experience in investigating child sexual abuse cases, Detective Geisendorfer was qualified to tell the jury what he normally observes and what generalizations he has drawn from those observations. All of his testimony was drawn from his thirteen years of experience, training, and observations in investigating child sexual abuse cases. This testimony was relevant to explain to the jury why a sexual abuse victim might not report the abuse at first and to inform them that victims commonly wait a number of years before reporting it. Point denied.

### Prejudicial Comments

In his final point, Campbell contends that the trial court plainly erred in permitting the prosecutor to make statements that he claims prejudiced the jury against him. The incident about which Campbell complains began with defense counsel asking its own witness a question that was peripherally related to the subject of a motion in limine. The specific comments Campbell complains of are: (1) the prosecutor stating, "if [defense counsel is] going to open this door, I'm going to walk through it," and (2) the court telling defense counsel, "if you want to open the door, where we've already been before, it's entirely up to whatever you and [co-counsel] decide." Campbell contends that these comments led the jury to believe that defense counsel was prohibiting the prosecutor from presenting all of the evidence to them, thereby prejudicing the defense in the eyes of the jury.

Conceding that this alleged error was not properly preserved because counsel failed to object, Campbell requests plain error review. To prevail on plain error review, the appellant must show that the error was open and obvious and so substantially affected his rights that manifest injustice or a miscarriage of justice will result if left uncorrected. *See Tisius*, 92 S.W.3d at 768. "[U]nless a claim of plain error *facially establishes* substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' [we] will decline to exercise [our] discretion to review for plain error under Rule 30.20." *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (emphasis added).

Plain error review is to be used sparingly and does not justify review of every allegation of trial error that has not been properly preserved. *Mayes*, 63 S.W.3d at 633. The burden of proving the existence of a manifest injustice or miscarriage of justice rests with the appellant. *Id.* at 624. Campbell claims that he was prejudiced in the eyes of the jury by these comments, but he does not demonstrate how. He, therefore, fails to "facially establish[ ] substantial grounds for believing a manifest injustice or miscarriage of justice has occurred" as a result of this alleged error. Because we do not discern plain error from the face of this record, we decline any further review. Point denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

BRECKENRIDGE and HOWARD, JJ., concur.