

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD77684 |
| | ) | |
| ALAN JOHN GORMAN, | ) | Opinion filed: August 18, 2015 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY, MISSOURI**
**The Honorable William B. Collins, Judge**

Before Division One: Cynthia L. Martin, Presiding Judge,
Joseph M. Ellis, Judge and James E. Welsh, Judge

Appellant Alan Gorman appeals from his convictions for one count of statutory sodomy in the first degree, § 566.062,[1] and one count of child molestation in the first degree, § 566.067. Appellant contends that the trial court abused its discretion when it excluded evidence that the victim had been molested by her biological father. For the following reasons, the judgment of conviction is affirmed.

In 2014, Appellant was charged by superseding indictment with one count of first-degree statutory sodomy, one count of first-degree child molestation, and one count of second-degree child molestation. The charges arose in 2012 after Appellant's stepdaughter, T.B., told her grandparents that Appellant had molested her.

---

[1] Unless otherwise noted, all statutory citations are to RSMo 2000.

At trial, T.B. testified that Appellant first touched her when she was seven or eight years old while she was sleeping in her bunk bed. She explained that she woke up to Appellant touching her vagina with his hand followed by him grabbing her hand and making her touch his penis. T.B. testified that the second incident occurred when she was twelve years old. She explained that she was sleeping in her mother and Appellant's bed when Appellant rolled over, put his hand down her shorts, and touched her vagina over her underwear. When T.B. turned to face Appellant, Appellant stopped touching her and said, "Oh, sorry." T.B. further testified to a third incident that occurred the day before she told her grandparents about the molestation. She explained that Appellant touched her breast over her clothing while she was sleeping on the couch.

Following T.B.'s direct examination, Appellant requested he be allowed to make an offer of proof. Counsel for Appellant indicated that he believed the proffered testimony "would be admissible and necessary relating to a potential diagnosis for false projection and other issues regarding prior sexual abuse." During the proffer, T.B. testified that, in 2011, she was told by her mother and Appellant that Appellant was not her biological father. At the same time, T.B. was told that she had been molested by her biological father. T.B. further testified that she had no conscious recollection of the molestation by her biological father but has had one or two "flashes."

Following the proffer, Appellant explained that he believed the testimony was relevant to his defense that T.B. was falsely projecting the abuse by her biological father onto Appellant. The State objected to the admission of such evidence as hearsay and further objected that the evidence was inadmissible under the rape shield statute. The trial court concluded that the evidence was inadmissible.

Appellant also testified at the trial. He denied having ever touched T.B.'s vagina. He further testified that he may have accidentally touched T.B.'s breast while waking her up that day she was sleeping on the couch.

The jury subsequently convicted Appellant of the first-degree statutory sodomy and the first-degree child molestation charges but acquitted Appellant of the second-degree child molestation charge.[2] The trial court sentenced Appellant to ten years in the Missouri Department of Corrections on each of the two charges and ordered the sentences to run concurrently. Appellant now raises two points of error on appeal.

In his first point, Appellant contends that the trial court abused its discretion by relying on the rape shield statute to exclude evidence that T.B. had previously been molested by her biological father. Appellant asserts that he did not intend to use such evidence to impugn Appellant's character but rather to demonstrate that T.B. was falsely projecting the molestation by her biological father onto Appellant. Thus, Appellant avers that the evidence was relevant to his defense.

"Trial courts retain broad discretion over issues of relevancy and admissibility of evidence, and we will not interfere with those decisions unless there is a clear showing of abuse of discretion." *State v. Smith*, 314 S.W.3d 802, 807 (Mo. App. E.D. 2010) (internal quotation omitted). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

Appellant contends that the trial court erroneously used the rape shield statute to exclude evidence that T.B. had been molested by her biological father. However, the

---

[2] The second-degree child molestation charge arose from T.B.'s testimony that Appellant had touched her breast while she was asleep on the couch in 2012.

3

record does not definitively establish that the trial court excluded such evidence on the basis of the rape shield statute.

Following the direct examination of T.B., Appellant requested he be allowed to make an offer of proof. Appellant's counsel explained that "the testimony this witness [T.B.] would offer would be admissible and necessary relating to a potential diagnosis for false projection and other issues regarding prior sexual abuse." During the offer of proof, the defense elicited testimony from T.B. that, in November of 2011, she was told that Appellant was not her biological father and that she had been molested by her biological father. Further testimony from T.B. indicated that she has "no conscious recollection of the molestation by [her] biological father" but has had one or two "flashes" that are incomplete and "don't reference one specific instance."

At the offer's conclusion, the trial court asked "what [the evidence] was being offered for." Appellant explained that it was the defense's belief that issues regarding false projection existed due to T.B. being made aware of the molestation by her biological father. Defense counsel further argued that, although such evidence "is subject to the Rape Shield," the defense believed "it's relevant to the credibility of the witness, especially towards influences on her testimony." The State then argued that the evidence should be excluded under the rape shield statute and as inadmissible hearsay.

Following counsel's argument, the trial court stated it was "trying to come up with how [the offer of proof] moves this case forward." Appellant argued that the evidence went to T.B.'s credibility and that "the jury knowing that [T.B.] had learned recently about

4

some other incident of sexual allegation of touching is directly relevant." The trial court then ruled:

> [W]e're not getting into this. It's not admissible. This has no relationship to it, it's not – I am loathe [sic] to even come up with an idea of how this comes even close when we're talking about something that nobody even knows if it really happened. I mean, that's the problem I am having here is I don't know that anything ever really happened. It doesn't make any sense. . . . [Y]ou have talked about projection and things like that, and I am not even sure that there has been any false projection which is one of the things you indicated this is to indicate[.] . . . And [T.B.'s] own testimony is she doesn't even know, A, if it happened; and B, she hasn't talked to any professional person about it or knows no indication of that.

After a discussion regarding T.B.'s memory of the molestation and the origin of the allegations against her biological father, the trial court stated it had made its ruling.

Therefore, although the parties discussed the rape shield statute during the offer of proof, the trial court did not expressly exclude the evidence on that basis. Rather, the trial court's comments suggest the evidence was excluded on relevancy grounds. "To be admissible, evidence must be logically and legally relevant." *State v. Baker*, 422 S.W.3d 508, 513 (Mo. App. E.D. 2014). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* at 513-14 (internal quotation omitted). "Legal relevance weighs the probative value of the evidence against its costs – unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* at 514 (internal quotation omitted).

Appellant argued that the offer was relevant to establish that T.B. was falsely projecting acts of molestation to him. However, as the trial court's comments suggest, the fact that T.B. had been told she was molested by her biological father did little to establish whether such a projection had occurred. There was most certainly no testimony from anyone that a single statement to T.B. of an undescribed act of

5

molestation by her biological father would have prompted her to describe, in detail, specific acts of sexual abuse by Appellant occurring in specific rooms of the house. Thus, the fact that T.B. had been molested by her biological father, in and of itself, does not make it any more or less probable that Appellant committed the charged offenses.[3]

Moreover, to the extent the trial court's exclusion of the evidence could be attributed to the rape shield statute, it is not erroneous. In order to establish his theorized defense, Appellant would necessarily have to elicit testimony that T.B. had previously been molested. "Section 491.015, commonly referred to as the 'rape shield' statute, creates a presumption that evidence of a victim's prior sexual conduct is irrelevant." *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013). Section 491.015.1 provides:

> In prosecutions under chapter 566[,] . . . evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:
>
> > (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or
> >
> > (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

---

[3] On appeal, Appellant argues that the proffer was relevant especially in light of T.B.'s testimony that Appellant first molested her in her bunk bed and the conflicting testimony from T.B.'s mother that T.B. had slept in a bunk bed only when T.B. was "really little," before they lived with Appellant. Appellant asserts that such testimony suggests that T.B. slept in a bunk bed when she lived with her biological father, not Appellant, and, therefore, supports his contention that T.B. is falsely projecting the abuse by her biological father onto Appellant. First, we note that, despite Appellant's reliance on T.B.'s mother's testimony, T.B.'s sister testified that she and T.B. had bunk beds while they lived with Appellant on High Drive, which is the home in which T.B. testified the first incident of abuse occurred. More importantly, Appellant never argued to the trial court that the offer of proof was relevant in relation to credibility issues arising from the bunk beds testimony; nor did he attempt to renew his offer of proof following T.B.'s mother's testimony about the bunk beds. Thus, he is precluded from raising such relevancy arguments for the first time on appeal. *See State v. Hindman*, 446 S.W.3d 683, 686 n.3 (Mo. App. W.D. 2014) ("The defendant is bound by the arguments made and the issues raised at trial and may not raise new and totally different arguments on appeal.") (internal quotation omitted).

6

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

"If proffered evidence falls within one of the statutory exceptions, it is 'admissible only to the extent that the [trial] court finds the evidence relevant to a material fact or issue.'" *Smith*, 314 S.W.3d at 808 (quoting **§ 491.015.2**).

Appellant concedes that evidence regarding T.B.'s biological father molesting her does not fall under any of the statutory exceptions to the rape shield statute. Nevertheless, Appellant avers that the evidence is still relevant and should have been admitted to ensure his right to a fair trial. In doing so, Appellant relies upon this Court's opinion in **State v. Douglas**, 797 S.W.2d 532 (Mo. App. W.D. 1990).

In *Douglas*, the defendant was charged with sexually assaulting the victim in the summer of 1987. *Id.* at 534. At trial, a pediatrician testified that an examination conducted on the victim in 1988 revealed the absence of the victim's hymen, which the pediatrician explained would be an unusual finding on an individual who had not engaged in sexual intercourse. *Id.* On cross-examination, the defendant sought to question the victim regarding her sexual activity between the summer of 1987 and the time of the examination in 1988. *Id.* In particular, the defendant pointed to the pediatrician's report, which noted that the victim had been sexually active with her boyfriend in the months leading up to the exam. *Id.* The trial court used the rape shield statute to exclude evidence that the victim was sexually active with her boyfriend

7

between the summer of 1987 and the time of the examination in which the absence of the hymen was noted. *Id.*

On appeal, we determined that the trial court erred in excluding such evidence because allowing the State to show that the victim's "hymen was absent, with the clear and calculated implication that its absence was caused by intercourse with the defendant, then to forbid the defendant to show that [the victim] had had intercourse with another, was violative of [the] defendant's right to a fair trial." *Id.* at 535-36. In doing so, we rejected the State's argument that the rape shield statute requires the exclusion of all evidence of the victim's prior sexual conduct that does not fall within one of the four statutory exceptions. *Id.* at 535. Instead, we concluded that "the rape shield statute may not be applied so strictly as to deprive the defendant of the fair trial comprehended by the concept of due process." *Id.*

In subsequent cases, this Court has indicated that it is necessary to "consider both the defendant's constitutional rights as well as the prohibitions of the rape shield statute" in determining whether evidence was properly excluded. *State v. Sales*, 58 S.W.3d 554, 558 (Mo. App. W.D. 2001); *see also State v. Samuels*, 88 S.W.3d 71, 81 (Mo. App. W.D. 2002). But in doing so, we have interpreted *Douglas* narrowly to hold:

> [I]f the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial.

*Sales*, 58 S.W.3d at 559. In fact, since *Douglas*, the only other situation in which a court has found a trial court's exclusion of evidence under the rape shield statute violated a defendant's constitutional rights is where the defendant sought to introduce

8

evidence of prior sexual abuse to contradict the State's evidence inferring that the defendant could be the only source of the victim's precocious sexual knowledge. *See Samuels*, 88 S.W.3d at 82.

This case does not present a situation in which the rape shield statute prevented Appellant from countering State's evidence that inferred his guilt. The State never elicited any medical testimony implying that T.B.'s sexual interaction was limited to Appellant; nor did the State offer evidence suggesting Appellant was the sole source of T.B.'s precocious sexual knowledge. Rather, Appellant sought to introduce evidence that T.B. had been molested by her biological father to argue mistaken identity by contending that T.B. had mistakenly attributed that molestation to Appellant.

We recognize that "[a] defendant in a criminal case has a constitutional right to present a complete defense." *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007); *see also State v. Jones*, 716 S.W.2d 799, 802 (Mo. banc 1986) (Blackmar, J., dissenting) ("[T]here is a serious constitutional problem if a statute deprives a criminal defendant of the opportunity to introduce evidence which is relevant and material in his defense."). As previously explained, however, the offer, in and of itself, does little to establish mistaken identity. Furthermore, to the extent the proffer supports Appellant's theory, he would be asking the jury to conclude that T.B. was falsely attributing the abuse by her biological father to Appellant solely from the fact that T.B. had been told that her biological father molested her. Without more, such an offer is too speculative and remote to warrant admission. *See State v. Harvey*, 641 S.W.2d 792, 798 (Mo. App. W.D. 1982) (finding that the trial court did not abuse its discretion in excluding evidence of an unrelated sexual assault on the victim where the offer of proof was too

speculative to support the defense's desired inference that the victim believed she could charge anyone with rape with impunity because the prior assault did not result in a conviction).

Accordingly, in light of the facts and circumstances of this case, we cannot say the trial court's exclusion of the evidence was so arbitrary and unreasonable as to constitute an abuse of discretion. Point denied.

In his second point, Appellant contends that the trial court plainly erred in sustaining the State's objection to its offer of proof and excluding evidence that T.B. had previously been molested by her biological father because § 491.015 bars evidence only of the complaining witness's *prior* sexual conduct. Appellant avers that, when viewed in the context of his defense of mistaken identity, evidence that T.B.'s biological father molested her was not *prior* sexual conduct but, instead, the *same* sexual conduct as described in the information.

Appellant concedes that he failed to preserve this argument at trial and requests plain error review. "Rule 30.20 authorizes this Court, in its discretion, to review 'plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.'" *State v. King*, 453 S.W.3d 363, 375 (Mo. App. W.D. 2015). However, "[w]hile plain error review is discretionary, an appellate court should not use it to impose a *sua sponte* duty upon a trial court to correct mistakes of a defendant's own making." *State v. Shockley*, 410 S.W.3d 179, 201 (Mo. banc 2013).

The record indicates that Appellant injected the issue of the rape shield statute about which he now complains. Prior to trial, Appellant filed a "Notice of Intent to Illicit

10

[sic] Information From the Complaining Witness Pursuant to 491.015 RSMO."[4]  At a pretrial conference, Appellant again intimated to the court that it would seek to introduce evidence regarding T.B. that would be subject to the rape shield.  Most telling, following the offer of proof, defense counsel stated: "I know that [the offer] is subject to Rape Shield."  Given Appellant's repeated assertions that the rape shield statute applied, we will not use plain error to impose a *sua sponte* duty on the trial court to correct what Appellant now perceives to be error.  Point denied.

Judgment affirmed.

Joseph M. Ellis, Judge

All concur.

---

[4] The § 491.015 notice is not included in the legal file provided to this Court.  The record also indicates that issues pertaining to the rape shield statute were raised in the parties' motions *in limine* and in one of Appellant's motions for a continuance.  Those motions, likewise, were not provided to this Court.