STATE of Missouri, Plaintiff-Respondent,

v.

Julian H. ROWLAND, Defendant-Appellant.

No. SD 34621

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: August 30, 2017

Attorney for Appellant—Margaret M. Johnston of Columbia, MO.

Attorneys for Respondent—Joshua D. Hawley (Attorney General) and Nathan J. Aquino of Jefferson City, MO.

Nancy Steffen Rahmeyer, P.J.

A jury found Julian H. Rowland ("Defendant") guilty of three separate offenses against Victim arising out of a series of acts that were part of a single sexual assault in June 2015. Defendant appeals raising four points. Defendant's first three points assert that the evidence was insufficient to permit a reasonable jury to find beyond a reasonable doubt that Defendant used forcible compulsion to commit the acts in question. Defendant's fourth point claims that the trial court abused its discretion in the admission of evidence. We reject Defendant's points, and affirm the trial court's judgment.

*Points I Through III—Claim Evidence Was Insufficient To Permit Finding of Forcible Compulsion*

Defendant claims that there was insufficient evidence to permit a finding of

forcible compulsion in each of the charges against him. Section 556.061(12), RSMo, Cum.Supp. 2013, provides:

> "Forcible compulsion" means either:
>
> (a) Physical force that overcomes reasonable resistance; or
>
> (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person[.]

"A victim is not required to physically resist where she submits to an offensive act out of fear of personal harm." *State v. Campbell*, 143 S.W.3d 695, 699 (Mo.App. W.D. 2004). The existence of an implied threat is based on the totality of the circumstances. *See id.* at 698-99 (affirming the sufficiency of the evidence to support a finding beyond a reasonable doubt of an "implied threat" based on the totality of the circumstances including prior uses of force, threats and violence). Defendant claims what is at issue in this case is an "implied threat" because no weapon was used and no direct threatening words were used at the time of the assault.

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal,[1] this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Ess*, 453 S.W.3d 196, 206 (Mo. banc 2015) (internal quotations omitted). This Court, however, "may not supply missing evidence, or give the [state] the benefit of unreasonable, speculative or forced inferences." *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (internal quotations omitted). Evidence is sufficient to support a conviction when "there is sufficient evidence from which a reasonable [fact-finder] might have found the defendant guilty beyond a reasonable doubt." *State v. Coleman*, 463 S.W.3d 353, 354 (Mo. banc 2015); *see also Musacchio v. United States*, —— U.S. ——, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016).

*State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016) (brackets in original except for footnote). Further, "[i]nferences contrary to the verdict are disregarded unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Kopp*, 325 S.W.3d 466, 467 (Mo. App. S.D. 2010) (internal quotations and citation omitted).

In this case, Victim, a customer service representative, was showing Defendant an apartment for rent; she testified that, as she opened the closet to show closet space, Defendant approached her from behind and put his hands around her waist. She asked him what he was doing and he replied, "something to the extent of I just want to have a little fun or, want to have a little fun?" Victim told him she was married and backed away, even showing her wedding ring. Victim had not seen a weapon but was concerned that he might have one and felt "terrified", "like [she] couldn't escape", "was afraid and alone in a vacant apartment. And recently a realtor had been murdered in a similar situation." As the situation progressed, Victim was "[r]eally scared," and "froze in fear." Defendant then physically sexually assaulted her.

Victim did not "fight back or anything" because she "didn't think it would do any

---

1. Both issues are analyzed under the same standard of review. *State v. Browning*, 357 S.W.3d 229, 233 (Mo.App. S.D. 2012).

good." Victim "just wanted to be safe and [she] was scared. And [she] was trying to go to a different place in [her] head"—she "was trying to be somewhere else." Victim did tell Defendant "[n]o" and "[s]top" "several times," but Defendant ignored her demands. Victim did not recall Defendant saying anything to her during this time.

Defendant claims that Victim's calmness and behavior after the attack is evidence that Victim was not threatened and that the sexual encounter was consensual. These claims ignore our standard of review. The jury heard two conflicting accounts of what occurred and believed Victim that the sex was not consensual. Victim testified that she acted calmly because she was in shock and did not know what to do. Victim testified she "let [Defendant] in" her vehicle because "if I had left him there my thought was, what if he ran? What if he never got caught? I needed to let somebody know." Victim drove Defendant back to her office, which took about "two minutes, max." Victim did not call 911 because she "was still afraid he would hurt me. Or—I didn't know him. I didn't know his name." When Defendant asked whether Victim "could get him a deal on" the apartment where the sexual assault had occurred, Victim used that question as a reason to call her office, and ask for "George"—a predetermined code word to be used "when you're in trouble or if you need help." On the drive back to her office, Victim did not "jok[e] or laugh[ ] with" Defendant. Victim "couldn't believe what had just happened to [her]"; she "was tearful, but at the same time [she] was trying to hold it in because [she] didn't want [Defendant] to think or bolt or run because [she] wanted him to get caught." Defendant gave a false phone number when asked for his name and phone number so that "George" could get back to him about a deal on the apartment.

The jury was instructed that "[t]he term 'forcible compulsion' means a threat, expressed or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping of such person or another person." The jury heard Victim describe the manner and tone in which Defendant said he wanted to have "fun" and his physical actions in touching her. The jury heard Victim's reasoning for allowing Defendant in her car after the assault. We ignore any inferences contrary to the verdict unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *Kopp*, 325 S.W.3d at 467. In this case, a reasonable fact-finder could have found beyond a reasonable doubt that the totality of the circumstances demonstrated an implied threat that placed Victim in reasonable fear of serious physical injury and constituted forcible compulsion. Victim was alone in a bedroom of a vacant apartment with an able-bodied adult male who was unfamiliar to her and was between her and the door to the bedroom, who clearly was seeking to engage in unwanted and unencouraged sexual activities with her, and who continued his sexual advances toward her even after she told him she was married, no and stop. Victim was "[t]errified," "felt like [she] couldn't escape," and "froze in fear." Victim did not "fight back or anything" because she "didn't think it would do any good." Victim was still in shock after the assault and wanted to arrive safely at her office where she was protected. She did not want to alert Defendant that she was planning to tell about the sexual assault. If believed, this evidence was sufficient to permit a reasonable fact-finder to find beyond a reasonable doubt the existence of an implied threat that placed Victim in reason-

able fear of serious physical injury. Points I-III are denied.

### Point IV—Claim the Trial Court Abused Its Discretion in Admitting Evidence

The court allowed evidence that an offensive odor emanated from Defendant's penis during the collection of evidence from Defendant's body pursuant to a search warrant. Defendant claims the evidence "was not legally relevant."

A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. [T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.

*State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (internal footnotes and quotations omitted).

The prosecutor argued to the court that:

[t]he logical inference that we're asking the jury to draw is that after being notified that he was being accused of rape and sodomy he did a very rushed shower, shaved his genital region, and didn't wash his penis in his rush. And that goes to consciousness of guilt. And that's a reasonable inference a jury can draw from those facts.

In his reply during closing argument, the prosecutor further stated:

The offensive odor, it wasn't a smear tactic. That combined with the fact there was no stubble and there was a rash shows you that whenever he found out— he got that message at 2:16—he found out that he wasn't getting away with it, that she wasn't going to be one of the ones who suffer in silence, he rushed.

He missed washing his penis. He shaved very quickly. He got a razor burn. If he had shaved a few days before, there would have been stubble. There was no stubble.

This was an effort—he's right, these people, they understand forensics. He is trying to destroy evidence quickly before the police can get there. And he missed some stuff.

In addition to the odor, there was evidence that, in the short period of time between the offenses against Victim and Defendant's arrest, Defendant took a shower and shaved his pubic hair. There also was evidence that Defendant had a rash where his pubic hair had been located. From this evidence, the State sought to persuade the jury that it should draw the inference that Defendant took a shower and shaved his pubic hair in order to eliminate evidence of his acts against Victim. The State argued that inference showed Defendant's consciousness of guilt—i.e., consciousness that his acts against Victim were not consensual. The State further sought to bolster this inference by showing that the shower and shave were hurried and that the shower did not have the normal purpose to clean Defendant's body. The two primary pieces of evidence that showed these facts were (1) Defendant's penis had not been cleaned thoroughly and was emitting an offensive odor as a result and (2) the rash in Defendant's pubic area, which the State argued actually was a razor burn.

In these circumstances, the trial court's admission of evidence that an offensive odor emanated from Defendant's penis during the collection of evidence from Defendant's body was not clearly against the logic of the circumstances or so unreasonable as to indicate a lack of careful consideration. The trial court did not abuse its discretion in admitting this evidence, and Defendant's fourth point is denied.

The judgment is affirmed.

Jeffrey W. Bates, J.—Concurs

Daniel E. Scott, J.—Concurs