

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD35488
)
ANTHONY MITCHELL COOPER, ) **Filed: June 17, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

Honorable James K. Journey, Circuit Judge

**<u>AFFIRMED</u>**

Following a bench trial after waiver of a jury trial, the trial court found Anthony

Mitchell Cooper ("Defendant") guilty of five sexual offenses against a single child victim

("Victim") on three separate occasions when Victim was ten, twelve and fifteen. The

trial court subsequently sentenced Defendant to concurrent terms of life without

eligibility for parole until thirty years are served on two of the offenses and significant

but lesser, concurrent terms of imprisonment for the other three offenses. Defendant

appeals claiming in two points relied on that the trial court abused its discretion in (1)

excluding alleged specific instances of Victim's prior sexual conduct that were near in

time to Defendant's last sexual offense against Victim, and (2) admitting evidence of two violent acts by Defendant against his grandmother and brother (one before the first three sexual offenses when Victim was ten, and one apparently after the first three sexual offenses but before the fourth sexual offense when Victim was twelve) that were witnessed by Victim and, in part, were admitted to show Defendant used forcible compulsion in committing the first, second, fourth and fifth sexual offenses, and to explain why Victim did not disclose Defendant's sexual offenses until significantly after the offenses occurred. We reject Defendant's points, and affirm the trial court's judgment.

### Facts and Procedural Background

Defendant was charged by information with five separate offenses against Victim arising out of events that occurred on three occasions – once when Victim was ten; once when Victim was twelve; and once when Victim was fifteen. Count I charged forcible rape; Count II charged forcible sodomy; Count III charged child molestation in the first degree; Count IV charged forcible rape; and Count V charged rape in the first degree.

On July 13, 2017, Defendant waived a trial to a jury. On the first morning of trial before opening statements, the trial court addressed "preliminary matters" including Defendant's "motion to present rape shield evidence." Defense counsel indicated to the trial court that Defendant's motion was based on section 491.015.1(3). Under section 491.015.1(3) and 491.015.2, RSMo 2016, "evidence of specific instances of [a] complaining witness' prior sexual conduct . . . is inadmissible, except where such specific instances [are relevant and] are . . . [e]vidence of immediate surrounding circumstances of the alleged crime." Defense counsel sought to introduce evidence that Victim had

been sexually active between the second charged offenses at age twelve and before the third charged events at age fifteen. The trial court ruled "in limine" that "the rape shield law applies and such conduct, alleged conduct[,] by the victim is not admissible." Subsequently, on several occasions, Defendant tried to enter into evidence testimony that Victim had dated older boys.[1]

Over the course of the trial, the State called Victim and five other witnesses and introduced multiple exhibits. Defendant chose not to testify, but called five witnesses and introduced multiple exhibits. The evidence indicated Victim was eighteen when the trial began. Defendant was Victim's first cousin – Defendant's mother and Victim's mother are sisters. Defendant is approximately ten years older than Victim.

Defendant does not challenge the sufficiency of the evidence that convicted him. Suffice it to say, Defendant was convicted of five sexual offenses. There is no need to detail the facts of the sexual assaults. It is important to note that on each occasion, Defendant told Victim to be quiet and that he would hurt her if she told anyone. Victim did not disclose Defendant's acts against her to an adult until Defendant showed up at her house unexpectedly on December 7, 2014, and, with a boyfriend's encouragement, Victim told her mother about the abuse. Victim subsequently disclosed Defendant's acts to law enforcement and a child forensic interviewer in mid-December 2014.

At trial, Defendant also objected to testimony by Victim's mother that Defendant had a reputation for violence and turbulence. Victim's mother testified that Defendant's reputation for violence was known and discussed by and in front of Victim. Victim's mother also testified to various incidents of violence by Defendant. For instance, on one

---

[1] At the outset of the third day of trial, Defendant expanded his offer of proof relating to Victim's prior sexual conduct to include new information of Victim's activities with a boyfriend.

occasion Defendant pulled a knife on his own grandmother in the presence of Victim.[2] Victim's mother testified that Defendant threatened to kill his grandmother during the altercation. Victim's mother testified about another incident where Defendant chased his brother into Victim's mother's home when Defendant was carrying a gun. During this incident, Defendant was outside yelling at his brother, then threw a rock through the mother's window, damaged her truck with a rake, and fired the gun into the air.

Victim testified without objection that she was afraid of Defendant at the time of the first rape because, among other things, Defendant was "always getting in trouble" and "family history." At the time of the second rape she was afraid for the same reasons and because of the first rape. By that time, Defendant had the fight with his brother that involved Defendant firing a gun. Victim also testified without objection that, at the time of the third rape, Victim "still believe[d]" Defendant's threats against her were "credible" because of "things [she had] seen before and experienced."

## Analysis

### Standard of Review

We review a trial court's decision to admit or exclude evidence as follows:

> A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. [T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.

---

[2] After Victim's mother had already testified to the knife incident, Defendant objected and asked for a continuing objection to the specific incident testimony being used to establish reputation testimony for violence. Defense counsel also objected to the specific incident testimony arguing that this testimony was "improper reputation evidence."

4

***State v. Forrest***, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (internal footnotes and quotations omitted).

*Point I*

In his first point relied on, Defendant claims that the trial court abused its discretion in excluding evidence regarding the prior sexual conduct of Victim because this evidence would provide the fact-finder with a complete and coherent picture of the immediate surrounding circumstances of the last rape and "tend[ed] to impeach [Victim's] credibility." We disagree and deny this point.

Discussion

Section 491.015, RSMo 2016, provides in relevant part:

> 1. In prosecutions under chapter 566[3] . . ., opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:
>
> . . . .
>
> (3) Evidence of immediate surrounding circumstances of the alleged crime; . . . .

Although the language of the statute is mandatory (i.e., "evidence of specific instances . . . is inadmissible"), Missouri's appellate courts have described the statute as "creat[ing] a presumption that evidence of a victim's prior sexual conduct is irrelevant" in "sex-crime prosecutions." ***McIntosh v. State***, 413 S.W.3d 320, 331 (Mo. banc 2013) (citations omitted); ***State v. Rycraw***, 507 S.W.3d 47, 56 (Mo.App. E.D. 2016) (citation omitted); *see also* ***State v. Gorman***, 468 S.W.3d 428, 432 (Mo.App. W.D. 2015). The presumption is subject to the four exceptions set forth in the statute and to a judicially

---

[3] All five offenses charged in this case were offenses defined in Chapter 566.

5

created exception based on a criminal defendant's right to a fair trial required by the concept of due process. *Rycraw*, 507 S.W.3d at 56-57. If one of the statutory exceptions is met, "the evidence is admissible only to the extent that the evidence is also 'relevant to a material fact or issue.'" *Id.* at 57 (citations omitted). The judicially created exception has been "narrowly" interpreted to apply only if:

> "the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial."

*State v. Gorman*, 468 S.W.3d at 434, 433-34 (quoting *State v. Sales*, 48 S.W.3d 554, 559 (Mo.App. W.D. 2001)).

As a result, the judicially created "right to a fair trial" exception to section 491.015 does not apply when the evidence is relevant merely to impeach a victim's credibility and does not directly refute evidence that tends to show a defendant's guilt. *See State v. Smith*, 996 S.W.2d 518, 522 (Mo.App. W.D. 1999) ("Because [evidence of the victim's prior sexual conduct] is inadmissible, it necessarily is of no material significance in the case and is not pertinent to the issues developed and, thus, is irrelevant and collateral. . . . Evidence regarding whether [the victim] had ever allowed a boy to go up her shirt or down her pants is evidence of specific instances of her prior sexual conduct which did not fall within the four exceptions of the rape shield statute. . . . Thus, according to *Madsen*, this evidence was irrelevant and inadmissible such that the trial court did not err and abuse its discretion in preventing the appellant from inquiring whether the victim lied in her deposition concerning these matters." (citations omitted)).

*State v. Rycraw*, 507 S.W.3d 47, 56 (Mo.App. E.D. 2016), is instructive.  In

*Rycraw*, the Eastern District described the statutory exception for evidence of immediate

surrounding circumstances of the alleged offense as:

> very similar to the theory of res gestae.  *State v. Smith*, 157 S.W.3d 379,
> 383 (Mo.App. E.D. 2005).   Broadly speaking, res gestae "includes
> circumstances, facts, and declarations incidental to the main fact or
> transaction, and necessary to illustrate its character, and acts, words, and
> declarations which are so closely connected to the main fact or transaction
> as to constitute a part of it."  *Id*. (citing 29A Am.Jur.2d *Evidence* § 860
> (1994)).   Thus, acts shown under res gestae are admissible where they
> "precede the offense immediately or by a short interval of time and tend,
> as background information, to elucidate a main fact in issue."  *Smith*, 157
> S.W.3d at 383 (citing *State v. Sherman*, 637 S.W.2d 704, 706 (Mo. banc
> 1982)).

*State v. Rycraw*, 507 S.W.3d at 57.  In this case, Defendant argues that the information

regarding Victim's prior sexual activity with a boyfriend was "[e]vidence of immediate

surrounding circumstances of" the last rape.  We disagree.

Defendant's argument fails because the record and Defendant's proffers simply

do not support a reasonable inference that Victim's relationship with the boyfriend was

so closely connected to Defendant's last rape that the relationship constituted a part of the

rape, or preceded the last rape immediately or by a short interval of time and tended to

elucidate a main fact in issue.  So far as the proffers and record show, Victim's

relationship with the boyfriend played no role in Defendant's rape of Victim and was not

a part of the rape.  There was no showing that Defendant had any connection to the

boyfriend; there was no showing that Defendant was present during any interaction

between Victim and the boyfriend, or that Defendant even knew Victim had a boyfriend;

the boyfriend was not present during Defendant's last rape, and Victim's relationship

with the boyfriend apparently terminated several days before the rape; and there was no

7

showing the boyfriend played any role in Defendant's last rape. Simply put, Victim's relationship with the boyfriend appears to be completely unrelated and independent of Defendant's criminal conduct.

Victim's relationship with the boyfriend also did not precede Defendant's last rape "immediately or by a short interval of time," and did not tend to elucidate a main fact in issue. Victim's relationship with the boyfriend apparently ended several days before Defendant's last rape – too long for the relationship to be considered part of the res gestae of the rape. Further, Victim's relationship with the boyfriend did not tend to elucidate any significant fact in issue.

In his brief, Defendant appears to assert that Victim's relationship with the boyfriend elucidated three facts in issue: (1) the rapist's identity, (2) Victim's "incentive to fabricate," and (3) "the context of [Victim's] disclosure." However, Defendant's defense was that the offenses never occurred; not that if they did that Victim mistook Defendant, her first cousin, with whom she was familiar, on three separate occasions for another assailant. Also, there was no showing that Victim felt any pressure to divert attention from her own alleged relationship with the boyfriend by publicly and falsely accusing Defendant of multiple rapes eleven months[4] after the relationship with the boyfriend ended. And, even if Victim's relationship with the boyfriend somehow[5] was logically relevant to Victim's general credibility (as opposed to information directly refuting evidence of Defendant's guilt), section 491.015 does not permit the admission of

---

[4] The last offense occurred in February of 2014, and Victim's disclosure occurred in December of 2014.

[5] We see no logical relevance between Victim's alleged relationship with the boyfriend and her truthfulness.

8

an instance of prior sexual conduct that is relevant merely to impeach a victim's general credibility.

From the evidence at trial and Defendant's proffers, it appears the inference Defendant wanted the fact finder to draw from Victim's relationship with the boyfriend was that Victim was sexually active as a teenager and was, therefore, more likely than not to engage in sexual activity voluntarily with her ten-year-older cousin. As we noted, Victim's consent was not an issue in this case. That inference clearly is prohibited by section 491.015.[6] Defendant claims the events never occurred. The trial court did not abuse its discretion in excluding information relating to Victim's prior sexual history. Defendant's first point is denied.

*Point II*

In his second point relied on, Defendant asserts that the trial court "abused its discretion" in permitting, over Defendant's objection, Victim's mother to testify to Defendant's "alleged prior uncharged crimes" – i.e., that Defendant "threatened his grandmother with a knife at a family dinner in 2006 and . . . chased his brother with a gun before throwing a rock through [Victim's mother's] window in 2008 – because those alleged acts "had no legitimate tendency to show" Defendant used forcible compulsion in committing the three rapes and sodomy for which he was found guilty. We reject this point because the mother's testimony was admissible.

---

[6] *See **State v. Madsen***, 772 S.W.2d at 658 (where the victim was alleged, at the time she was forcibly raped and sodomized, to be living with one man and having "periodic . . . sexual involvements" with a second man, stating "[a]lmost all of [the defendant's] claims of error relate to his attempts to establish the victim's promiscuity, suggesting that she was free with her favors and therefore not resistant to . . . his advances when they met during her late evening sortie. The inferences he suggests have often been argued in rape trials over the years but were expressly rejected in the rape shield statute.")

In each of the rapes and in the sodomy, Defendant was charged with committing the offense "by the use of forcible compulsion." Under section 566.061(12), RSMo 2000:

(12) "Forcible compulsion" means either:

(a) Physical force that overcomes reasonable resistance; or

(b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person.

"'A victim is not required to physically resist where she submits to an offensive act out of fear of personal harm.' *State v. Campbell*, 143 S.W.3d 695, 699 (Mo.App. W.D. 2004). The existence of an implied threat is based on the totality of the circumstances. *See id.* at 698-99." **State v. Rowland**, 528 S.W.3d 449, 451 (Mo.App. S.D. 2017) (parenthetical omitted).

As noted in **State v. Campbell**, a child victim's mother and two sisters "testified as to Campbell's physical abuse of the family." **State v. Campbell**, 143 S.W.3d 695, 698-99 (Mo.App. W.D. 2004). The child victim also testified that she had seen Campbell "hit" and "throw glasses at" her mother, and was aware that Campbell "had stomped on her mother's face with a boot, leaving a mark." *Id.* 699. The appellate court further noted:

As a general rule, evidence of uncharged misconduct or prior bad acts is inadmissible to show that the defendant has a propensity to commit such acts. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Introduction of such evidence for that purpose alone violates the defendant's right to be tried only for the offense charged. *State v. Barriner*, 34 S.W.3d 139, 144 (Mo. banc 2000). Such evidence is admissible, however, if it is both logically and legally relevant to prove the crime charged. *Id.* Evidence is logically relevant if it has a legitimate

tendency to directly establish the defendant's guilt of the crime charged. *Bernard*, 849 S.W.2d at 13. The evidence has a legitimate tendency to establish guilt where the tendency is based on something other than the idea that the defendant has poor character, and therefore, is likely guilty of the offense charged. *See Barriner*, 34 S.W.3d at 144–45. Evidence is legally relevant if its probative value outweighs its prejudicial effect. The balancing of the evidence's probative value against its prejudicial effect on the jury rests within the sound discretion of the trial court. *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002).

**Testimony about Physical Abuse**

In addition to [the child victim's] testimony about Campbell's acts of physical abuse, Campbell also complains about similar testimony from [the child victim's] sisters and mother. Both [the child victim's] older sister . . . and her mother discussed Campbell's assault on the mother that resulted in a mark on her face. The mother testified that the children were aware of the assault. [The older sister] also testified that Campbell would sometimes knock people across the room or hit or paddle them. She stated that Campbell hit her mother, threw things at her, and choked her. [The child victim's] younger sister . . . described two incidents when Campbell got mad and punched her in the stomach, once shortly after she had surgery.

The testimony about Campbell's physical abuse was logically probative as to a disputed issued in the case: whether Campbell used forcible compulsion to commit his acts of sodomy on [the child victim]. . . . The evidence was relevant to explain why [the child victim] did not consistently resist the sexual abuse and why she failed to report it to her mother or anyone else until after she had moved out of the family home.

. . . .

[The older sister's] testimony [about Campbell's use of pornography] was also logically relevant. Because [the child victim] was the only witness to the sexual abuse and because the appellant attacked her credibility, [the older sister's] testimony about the pornography was relevant to corroborate [the child victim's] testimony. Evidence is logically relevant if it tends to corroborate evidence that itself is relevant and bears on the principal issue of the case. *Tisius*, 92 S.W.3d at 760.

Evidence is also logically relevant if it tends to make the existence of any fact that is pertinent to the determination of the action more or less probable than it would be without the evidence. *Id*. The evidence of common physical abuse in the household and the children's exposure to pornography was logically relevant and highly probative because these acts were closely related to the crimes themselves. The high degree of probative value, in both instances, outweighed any prejudicial effect it may have had. We cannot say that the trial court plainly erred or abused its considerable discretion in making this determination.

11

*Id.* 143 S.W.3d at 700-02.

In this appeal, Victim's mother's testimony that Defendant threatened his grandmother with a knife in 2006 (before the first rape) and chased his brother with a gun in 2008 (apparently after the first rape and before the second rape) and that Victim observed these events was highly probative to show (1) Defendant used forcible compulsion in each of the rapes and sodomy through threats that placed Victim in reasonable fear of death or serious physical injury, (2) why Victim did not resist Defendant's sexual acts more forcefully (by calling for help or struggling), (3) why Victim did not report Defendant's acts to an adult or to law enforcement for months or years after the acts, and (4) why Victim followed Defendant's instructions to be quiet, and believed Defendant would follow through on his threats to hurt her if she told anyone, and (5) to corroborate Victim's credibility. The trial court did not abuse its discretion in determining that this testimony by Victim was logically relevant, and that its strong probative value outweighed any unfair prejudice to Defendant.

Point two is denied, and the trial court's judgment is affirmed.


Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs